OPINION of the Court, by
Judge Logan.
Bow man was the proprietor of 500 acres of land in the lili» neis grant, which has been found to contain salt -water ■; and whilst ignorant of this discovery, he alleges that the appellees, well knowing the circumstance, as well as relying on his want of information, imposed a fraud upon him in the purchase of 250 acres, containing said water.
To evince the fraudulent intention in the purchase, he seis forth Ms residence ia the county of Shenandoah, *48 in Virginia; that the appellee James being then in Virginia, his brother and codefendant, just informed of the salt water discovered, and the prospect of its immense value, wrote immediately to him, and sent a special messenger with the letter, to purchase said land.
, That the appellant's agent, residing at Louisville, ⅛ Jefferson county, being informed of the dispatch messenger, and the object of his mission, and when preparing to forward the recent acquired information, was applied to by the said John, who endeavored to dissuade him from sending the information to the appellant ; and in order to effect his purpose, proposed making. him interested in the purchase.
, That the said James received the letter from his brother, and, according to his request, applied to the appellant with money transmitted by the messenger, and affecting an almost total ignorance of the land and its value, as a traveller removing part of his family to the western country, where land could be purchased upon low terms, and saying he had been recommended to the appellant as the proprietor of s&re military land in the grant: who answered his interrogatories so evasively, but so artfully, as clearly to impress on his mind that he neidler resided near the land, or had any particular information respecting it; although, in fact, he resided within a few miles of it, and possessed the knowledge aforesaid of the discovery of salt water.
These allegations are in substance supported by the proof in the cause. Indeed, the defendants, in their answers, do not deny the most material of them ; but claim the benefit of better inferences than the fraud imputed by the appellant.
In answer to the fraud charged, their defence may be reduced to three points : 1st, the opinion as expressed by the appellee John, before he started the messenger with money to his brother to purchase the land, that the salt water on it “ was not worth any thing” ; 2dly, that his expressions to the appellant’s agent were merely in ’•'■jest” s and Sdly, that the sum given for the land was a full and a high price for it.
With respect to the first ground relied on in the de-fence, it is proper to observe, that whilst the appellee gave it as his opinion that the salt lick on the land was t|prth nothing, contrary to the opinion of his friend Mr- *49 Lock, who ⅛ advised him to parchase it/’ he, ⅛ u a lew days after/5 informed Lock of his intention to send with a view to assist his brother to remove his mother to this country, and to “ direct him to purchase the lick ; but feared be would do but badly.” And by his answer it appears, that “ before he wrote to his brother on this subject, he had applied to” the supposed agent of the appellant, “ to know whether he was authorized to sell the land, who informed him he was not.” To this may be added, that about this tithe it appears he did send, arid with money, to purchase, if the land could be bought; and if not, to obtain a lease of it.
Under these circumstances, combined therewith th6 application to the appellant’s agent, and the nature of the interview, this court cannot infer any thing favorable to the appellee from the ground first taken. Bui on the contrary, it is constrained, by a conviction not to be resisted in the ordinary estimation of circumstances, to declare such evidences of insincerity, as but farther proof of a conceived fraud; and as evincing an expectation to discourage others from the intended purchase. Nor does it follow that this idea mi the salt lick being of but little value was necessary to be impressed only on those who had in view to purchase it, but likewise on others, who might otherwise disseminate contrary information.
The second ground relied on in the ■ answer, which seems to have for its object to divert the force of the fact charged, by turning into ridicule and idle pastime the expressions of the said John when he applied to the appellant’s agent, this court cannot countenance. The manner in which the interview was had and conducted, as proven in the cause, repels the idea of innocent jokes on the occasion. The court cannot rationally account for expressions and conduct in that interview «pon the ground of fun. It can perceive but one obvious meaniag in calling at the house of Bowman’s agent late in the evening, and, after some conversation on the subject, then to request him to walk into another room ; his shutting the door and reasoning with him, as the agent swears he did, and which his father corroborates, not to send to Bowman’s, stating that his mes-» ««nger was five days gone, and he had given him directions not to spare his horse. '
*50 The fact, then, as proven by the appellee, that he had not so instructed the bearer of his letter, and that he was reaiiv but indifferently mounted, can but be viewed as another circumstance of his fraudulent intention. To induce the agent to believe the trip unnecessary, he reminds him of his start of five days, and the great speed he was directed to make of his horse for the journey, &cc. ⅛ and because he proves it untrue, hence ho concludes he will be thought to have been “jesting.” The more obvious conclusion is, in the opinion of this court, that the slower the horse and the longer the delay, the greater the fear of the agent’s messenger first arriving.. • -
It may be proper to give an extract of JohnGwathmey⅛ deposition, Bowman’s agent, as completely exposing the duplicity of the appellee John, in his pretences as ta the little value of the salt water on the land. That said John Bates stated, as “ his opinion, it was the strongest water that is yet known, and pulling out a phial of it, said it was of twice the strength of Mann’s lick water, and observed it was worth 10,000/. Mr. Bates then asked me if I would not like to have a share in it, and said that his brother intended to buy it for himself, him and Capt. Lock, and that himself and Capt. Lock had been talking on the subject, and concluded that I was well fixed at this place, and could dispose of salt on good terms, and had concluded that I would be a proper person to take into partnership.”
Gwathmey also swears that he thought Bates serious in this conversation. But to believe otherwise, would be contrary to the plainest evidences of human motive.
This evidence is conclusive in shewing the design of the man in bis dcc.larai.ion3 that the salt water on the land “ was not worth any thing.” And it very satisfactorily shows, that if it be true that the value of the land was given, Bates did not think so. This leads us tc consider that part of the defence which relies on having given a full price.
And it is true, several witnesses prove in the cause that they thought two dollars per acre, the price agreed to be given, high for the land ; and moreover, that the salt lick and water was ol little or no value.
The difficulty of ascertaining the precise value of salt water recently found, is not doubted; and it musí *51 <ofien, if not generally, be matter of speculation only. In this, however, it is to be recollected that the contract was mads on the third day of September, in Shenandoah, Virginia; and this suit to set it aside was commenced on the tenth day of November following, in Jefferson county, at the distance' of at least five hundred miles from the place of contracting.
If feet» ire truly ftstej, fate resfonine* or miltaksocfe-eulatioM from grounds*^ "Z nulling contrails; but fails fóraíunof'o' pinions or cal. ¿uladons as to SnJou»h<°tobe Sfdofeá,
*51 If, then, there were grounds to believe the salt water on the land would be valuable when this contract was made, the expectation of which seems to have influenced the conduct of the appellees, this court cannot perceive sufficient time thereafter for a fair experiment to have been made, as to the quantity and quality of the water, So blast the flattering prospects of its value.
It was the interest of the appellees to conpeal its worth, if thereby they could expect to defend the fraud.
It was their policy to impress the idea of a bad bar-' gain even before suit; for a conscious fraud, by the sup-pressio vert, might well Have anticipated an application, for redress. - - ’
If it is intended, by proving the little value of the land and water, to repel the evidence of fraud as it re-fates to the appellees in the contract, it cannot avail them i because they thought differently of its value, as is proven in the most unquestionáble manner.
If the land thus sold for 5ÓÜ dollars had been worth 10,000/. as, by the evidence of Gwathmey, John Bates supposed it was, it is believed the fraud would have been universally admittéd. " Whether it was worth that sum, was, to be sure, matter of calculation, which might or might not prove correct. But it is not upon a conjectural and speculative worth, growing out of an uncertain and unknown matter, hidden within the bowels, of the earth from the view of both parties, that the complainant founds his application to chancery : it is upon, the concealment of fact, consisting of visible matter, already ascertained, and of a nature and quality to enhance the value of land, known to the purchasers, and by them believed unknown to the seller, that this application finds its way to the relieving arm of equitable power. '
Had the matter of fact which had been discovered, a fact efa material and substantive kind, been correctly rela-led as within the knowledge of the purchaser, a mistake *52 of opinion in a false estimate of Us worth, could be no ground for relief between parties able to contract. Rué although the court ought not to interfere in contracts founded on false reasoning, and mistaken calculations, Uom facts essentially detailed; yet, it is believed, it ought to exact a fair representation of premises raateri-a[ fo forming an opinion, in order that the party might possess the means of exercising his own powers of calculation. Such, it is conceived, is the spirit of the ruis which forbids a suggcstio falsi, or suppressio veri,
The purchi-fe having dist«,erepreveived the agent of the ¥.en.‘ior. f ,rom concealing the difeowry (mm artifice,"is°guHty «f fraud,ami a»u not hold thepurcfofo
When the contract was made, it appears that Bowman expressed soum apprehension the purchaser was an. impostor, and proposed to him to take back his money. To which Bates r-plied, “ he really was not taking him in ; that he knew nothing alnut the land, except what he had heard in Winchester ; that the complainant had land tor sale, and thinking his title indisputable induced him to purchase.”
A comment on such conduct is unnecessary. The fact Is, it abundantly appears that almost everv part of his conduct was wrapped up in the means of imposition and fraud.
B it the price of the fraud is made the strong-hand of defence. Its ingredients are the same as if 10,0001» certain were the worth of its purchase.
Salt water was dug for, and it was found. It was tried, and salt made of it. Its fluctuations, ebbs and flows, seem to have been well known to the defendant John. His calculations are made on those premises, and he deems it immensely valuable. He conceals, to-gefoer with'his coáctor, this distinct, visible, tried and substantive quality from its uninformed owner, and obtains both it and the land for his price on the laud it-se]j, And now declares he ought to hold all because hc madf a bargain. _ /
_ . How does the evidence in the cause disprove the representations of John Bates as to the probable value of the salt water on the land, and not only by his represen - tations to Gwathmey, when it was his interest to give the other side of the picture in regard to its worth, but also by his conduct clearly evincive of his real opinion ? It does not appear that better evidences were obtained to satisfy those witnesses who prove ⅜ of little or na> value, than Bates himself and others possessed, which it- - *53 duced a contrary opinion. It. does not even appear that she water has disappeared, or grown weaker in its state of attention when so highly prized. Fresh water may have been permitted to intermix with it, or the collection of mud and dirt to hide its quantity.
The labor expended does not seem to prove any thing conclusive in regard to the proper subject of inquiry. Oa what part of the land it was bestowed, how far it had progressed, ike. &c. is uncertain, except the statement as to cost. 1
It is conceived unnecessary to decide whether a case might not possibly happen, though fraudulent, but without injury, which ought not to be set aside by a court of chancery. ' ' •
It is however laid down as a “ constant rule in equity, that where there is either suppressio vert, or suggest-tio falsi, the release or other deed shall be avoided”— 1 Fonb, 113. - And in the same book, page 60, note (r), it is also declared in general terms, that “ wherever fraud or surprise can be imputed to, or collected from the circumstances of the transaction, equity will interpose and relieve against it.”
In this case, that there was suppressio veri, the court is well satisfied, and it is also of opinion that the truth suppressed was material information for the complainant in regard to the subject matter of contract.
The court would farther suggest, that to obtain one’s property for its supposed value against his will, or to deceive him into a consent, would be a fraud, which it would be very unwilling to countenance by dismissing the complainant’s bill, and1 might become pernicious in practice, by bringing the dishonesty and cunning of some to operate upon the honest credulity of others. And to permit fraud to elude the vigilance of chancery, fey cunning, and still greater fraud ih hiding for a time the real value of its purchase, seems too repugnant to the administration of justice, the protection of right, and the suppression of wrong.
Upon the best view we are capable of taking of the case, it is the opinion of a majority of the court, that the contract ought to be set aside, the writings cancel-led, and the defendants refunded their $ 250.
Decree reversed, See.