Judge Underwood
delivered the opinion.of the Court.
Beazley purchased from Williams a tract of land, and executed two notes for $1000 each, in part payment therefor. On the day the deed conveying the land was executed, Beazley drew two notes for $1000 each, payable in notes on the bank of the commonwealth, and oflereiihem to Williams, who refused to accept them, unfSs they were made *578 payable in dollars, without any addition. Beazley, fays one of (he witnesses, positively refused to give his note in that way. Williams assured him, if he would give his notes payable in dollars, he, Williams, would take commonwealth’s paper in payment. It was remarked by another witness, to wit: J. H. Letcher, then present, that it was his opinion, if Williams attempted to coerce specie'from Beazley on notes given for dollars, that the chancellor would afford relief if Beazley could make it appear that it was apoper contract. Beazley at length consented to give his notes payable in dollars. One of the witnesses wrote them, and they were so executed. Williams transferred the notes. The assignee refused to accept notes on the bank of the commonwealth in payment, instituted suit, and recovered judgment on one of the notes. Beazley filed his bill to injoin the replevin bond of two years, entered into in consequence of the judgment. The only ground of equity relied on in the original bill is, that Williams and his assignee fraudulently refused to accept commonwealth’s bank notes in payment. In the amendatory bill, Beazley alleges that he confided in the opinion expressed by Letcher, which he alleges was done in the presence and hearing o( Williams, and that the notes were executed with the understanding that their true construction in a court of justice would conform to the opinion expressed bv Letcher. Williams in his answer, denies that he was hound, or even agreed to accept notes on the hank of the commonwealth in payment. Tne court decreed in favor of Beazley, assuming as the basis of the decree, that Beazley had a right to discharge, his promissory notes by the payment of commonwealth’s bank bills. To reverse this decree, a writ of error with svperse.de.as is presented.
It is perfectly clear, that Beazley was not at the time he executed tin* notes to Williams, deceived or mistaken, in regard to the words used in the notes. He had drawn them payable in papar. Williams would not accept them in that way. They were redrawn and made payable in dollars. When Letcher spoke of the interpretation of the chancellor, it does not appear that «Afilliums said any thing. There is not the slightest mcumstance from which it can be *579 'infered, that Williams procured or induced Letcher to give his opinion with a view to draw, or per-uade Beazley to execute the. notes payable in dollars, leaving out the stipulation concerning bank notes. Such a combination between Letcher and Williams, might have amounted to a fraud which would have justified the interposition of the chancellor. If Letcher then, in the presence of the parties to the contract, expressed an opinion, which had influence over Beaz-ley, although it was erroneous, and Williams said nothing, is he amenable to Beazley, because he was deceived by Letcher’s mistaken views of the law? In other words, does it amount to a fraud on the part of Williams, to let an observation of Letcher’s pass uncontradicted, which was calculated to influence Beazley? if Williams knew that Letcher’s opinion was incorrect, and perceived that Beazley was entirely governed by it, we are willing, to concede, that a nice and cultivated moral sense would have prompted him to correct the error. But we know of no adjudged case, which pronounces the conduct of a party fraudulent, because he is silent, in respect to the opinions of strangers to the contract promulgated at the time the parties are contracting, although such opinions may influence, prejudicially, the other party to the contract.
No fraud, for a party to remain silent aa to correctness of an opinion, expressed by a stranger, to the contract, at time parties are contracting, although such opinion may influence, pre- 1 judicially, other party to contract.
Purchaser of property does not legally commit fraud by failing to communicate to seller knowledge of existing facts, of which tho seller is ignorant and the purchaser informed, altho* such facts, if known would operate directly to enhance value or price of the properly»
In the case of Taylor vs. Bradshaw, VI. Mon. 149, this court said, “from those who have reason to expect information from us, the truth should not be withheld; but such as look not to us for information, and expect no disclosure from us, have no cause to complain of our silence, and to reproach us with not speaking, with having suppressed the truth.” The supreme court of the United States, has decided that the purchaser of property does not legally commit fraud by failing to communicate to the seller a knowledge of existing facts of which the seller is ignorant, and the purchaser informed, although such facts, if known, would operate directly to enhance the value or price of the property. Whatever the moralists may think of these doctrines, the jurist is bound by them.
The rules which govern the jurisprudence of courts, cannot be applied with safety and certainty to the *580 secret thoughts and motives which influence human conduct in producing silence, and induce a part)- not to notice and contradict statements voluntarily made by those who are not parties to the contract. To pronounce a man guilty of fraud in such a case, nothing being established against him, but the fact of his silence, would be to establish a doctrine, which, in its practical results, might lead us into endless perplexities, and involve society in equal difficulties.
But purchaser is not justifiable in with’ holding from seller knowledge of advantages or value possessed by property, owing to any recent discovery» such as a valuable mine or mineral,'of which purchaser is informed, and seller igno- , rant at time of contract.
Parol evi-done'e is inad-missable- to contradict import of a promissory note, unlossit thPree™sthat been some mistake or
*580 This doctrine, however, does not tolerate the seller to conceal known defects not palpable to the purchasers observation, nor will it justify the purchaser in withholding from lh<3 seller, knowledge of advantages. or value possessed by the property, owing to any recent discovery, such as a valuable mine of mineral, of which the purchaser is informed, and the seller ignorant at the time of the contract. Fair dealing requires that the qualities, defects and advantages inherent in,and appertaining to the subject of the contract, should be. divulged. But to require the parties to go further, would be to prescribe a principle or rule of conduct, that could not be applied with safety.
Wc are of opinion, that the silence of Williams in regard to Letcher’s opinion, is not sufficient to fix a fraud on him. But it may be remarked that Letch-er’s statement to Beazley, was, in substance, that by applying to the chancellor, he would compel Williams to receive commonwealth’s paper in discharge of the notes, although written for dollars, “if he could make it appear that it mas a paper contract.'''' If this could not be made to appear, then it followed that Beazley was hound to discharge the notes in lawful money of the United Stales. The question is, basil been mgde to appear that it was a paper contract?
Thereis some contrariety in the depositions upon the subject; but before the depositions are considered and the weight of evidence determined, the question presents itself, is the evidence embodied in the depositions admissible to contradict the import of the notes? The case of Baugh vs. Ramsey, 1Y. Mon. 166. furnishes the answer. It cannot bo admitted urn-less it be shewn, that there has been some mistake of fraud committed. There is no pretence for a mistake in this case. Wc have already seen that there *581 is no ground upon which to impute fraud, in conse-querice of Williams’ silence. The only remaining ground upon which he can be charged with fraud, is that he promised, when the notes were executed to receive .commonwealth’s paper in payment, “if it continued tobe current in the <ountry,” at the matu-turity of the notes. It is manifest that he made no unconditional promise to receive bank notes in ment. If the commonwealth’s paper .was still “current in the country” at the maturity of the notes, then by the terms of the promise, they were to have been received in payment. I here is no proof shewing that commonwealth’s paper was then current. But suppose w'e are bound to take judicial notice of it ■without proof, the question then presents itself, does the making of such a promise on the part of Williams, and his subsequent failure to comply with it, constitute a fraud m taking the notes of Beazley, payable in dollars, which will authorize a court of chancery to interpose upon the ground of fraud and grant the relief prayed for in the bill? We think it does not. If the promise be valid (a matter which need not now be decided,) regarding it as a parol contract, fo do a thing which the promisor failed to do, we will not^ay that a court of law might not have afforded relief. There is no suggestion in the bill that Williams is insolvent, or that he has Jeff the State, or of any other fact which would show that a remedy at law, for a breach of his promise, (if there be one) would be unavailing. An appeal to the chancellor to enforce specifically such a promise against the assignee of a note in the absence of every alie-gation, shewing a defect of remedy against the signor for its breach, cannot be tolerated. promise may have been made in good faith, subsequent circumstances may have lead hjm to violate it. Such violation does not convict him of fraud ab initio.
Obligee’s pvo-P11851"*’lf ?bexecute note payable in "dollars,” to monweánh’s paper in payment, “if it be^urrenUn the country,” at maturity of and comply with bis promise,is t^g^ie ** obligor to re-lit fin equity, a”-^ executed6’ for “dollars.”
Quere, whe-therii insol-T.ency as“ alleged court haYe m erpose
Wickliffe and Wookti, for plaintiffs; Crittenden, *fcis defendants.
We cannot perceive any ground upon which to sustain the decree.
Decree reversed with costs, and cause remanded with directions to dismiss the bill with costs, and dissolve the injunction with damages.