CASE 45—ACTION BY JOSEPHINE MARTIN V. JACOB P. AKERS AND OTH-
ERS, TO RECOVER DAMAGES FOR DECEIT—MARCH 21.

# Akers v. Martin and Others.

### APPEAL FROM FLOYD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT, J. P. AKERS, APPEALS,
PLAINTIFF PROSECUTING CROSS APPEAL. REVERSED · ON ORIGINAL
AND CROSS APPEAL.

VENDOR AND PURCHASER—DECEIT OF PURCHASER—LIABILITY FOR PART-
NER'S MISREPRESENTATIONS—CHAMPERTY.

Held:   1. Where the purchaser of land represented to the vendor,
his sister, who lived in another State, and was ignorant of the
condition of the land, that the land had upon it no timber of any
value, when in fact there were upon the land more than 200
trees, which he had already contracted to sell at five dollars
per tree, and which constituted the chief value of the land, the
vendor is entitled to recover damages for the deceit.

2. One who furnished to the purchaser one-half the money to pay
for the land, and shared the fruits of the purchase, though he
was not present when the purchase was made, and did not par-
ticipate in the false representations, is liable to the purchaser
for one-half the amount recovered against him by the vendor.

3. The vendor, by making a contract with another to give him one-
half of all the money which might be recovered by suit or com-
promise on account of the deceit practiced upon her, he to pay
all costs—which contract was afterwards rescinded—did not
forfeit her right to recover damages for the deceit, as Kentucky
Statutes, section 215, providing that none of the forfeitures
declared by the chapter on "Champerty" shall apply to cases
of controversy between vendor and vendee, prevents such a for-
feiture, even if it would otherwise occur.

W. H. HOLT, ATTORNEY FOR APPELLANT.

The appellee, Josephine Martin, inherited from her father,
Daniel Akers, an interest in a tract of timber land. In April,
1895, her brother, Jacob P. Akers, went to Missouri, where she
had been residing since 1876, and bought from her for himself
and brother, the appellee, George Akers, her share in the land
for $800, her share having been set apart to her.

This suit was brought by her against the appellant alone, Jacob P. Akers, for fraud in the purchase, she claiming that appellant had at the time misrepresented the value of the land and its condition as to timber. The relief asked was the value of the timber he had sold off the land before he bought it from her, or if this relief could not be afforded that the contract be rescinded and he be required to account for the timber. She did not, in fact, really bring the suit, or prosecute it, but her brother, F. C. Akers, with whom appellant had had trouble, brought it and prosecuted it in her name, under a vicious contract with her. Appellant denied all fraud upon his part in the purchase—all right to recover, but set up that his brother, George Akers, was an equal beneficiary in the purchase, made his answer a cross petition against him, and asked in case of a recovery that he recover one-half thereof of him. In an amended answer he set up as a defense to any recovery, a contract between appellee, Josephine Martin and her brother, F. C. Akers, by which the latter was to attend to the suit, pay all costs and get one-half the recovery. In other words the defense of maintenance. George Akers admitted he was a co-equal purchaser, but averred he did not help make the contract and was not liable if any fraud was committed. The court upon final hearing dismissed the cross action as to him, and rendered a judgment for $375, with interest from May 8, 1896, and costs against appellant in favor of Josephine Martin. Both she and George Akers are appellees.

The contract between Mrs. Martin and F. C. Akers was vicious beyond doubt. Not only was he to get one-half the recovery from his brother, but she was not to pay any costs. This contract was made February 5, 1896, before any suit was brought.

We claim that this contract vitiated the whole proceeding. The suit was to recover the value of the timber which was a part of the realty. The case falls not only within the general law against maintenance, but the fair scope and spirit of section 211, Ky. Statutes, and she can not recover. Kentucky Statutes, sec. 211.

JAMES GOBLE, Attorney for appellee.

Appellee, Josephine Martin left Floyd county twenty years before this litigation began and settled in Missouri six or seven hundred miles away, and had never seen the land since and knew nothing of its value or condition. She sold it to her brother in April, 1895. He sought her at her home in Missouri, and according to his own story completed the purchase within

Akers v. Martin and Others.

two hours after reaching her home, which he now asks the court to uphold. He knew the land and the quantity, and value of it and the timber; had contracted the poplar timber thereon at $5.00 per tree, and knew this sale of timber would bring him more money than he was paying for both land and timber. He knew she was ignorant of the quantity, quality and value of the timber. He did not tell her of the sale he had made of it although she made inquiry of him about it and its value. This timber was taken off the land under the contract of sale he had made of it, and the price paid to him and his brother, a partner with him in the matter, and from this sale he realized more than he paid for the whole land and timber.

After she learned of the deceit and falsehood of her brother, she brought this suit for the value of the timber and obtained a judgment for only $375, from which he appeals, and she prosecutes a cross appeal.

The appellant in his defense adds insult to injury, by not only seeking to be relieved from the wrong he has done in defrauding her out of the value of her timber, but asks that a double punishment be visited upon his sister, in consequence of it, because she made with another brother of hers to aid her in correcting the wrong doings of this one, a contract that is forbidden by law. But we claim that this contract was only void as between the parties and will not prevent a recovery by her of the damages she sustained in the fraud practiced on her by her brother in the purchase of the land.

### AUTHORITIES CITED.

Bigelow on Fraud, 1 ed., pp. 27, 31 and 32; Pomeroy on Eq. Jur., sec. 901, vol. 2; Ky. Stats., secs. 209, 210, 215.

J. W. NORWOOD, Attorney for appellee.

The counsel for appellant bases his argument chiefly on the champertous contract between appellee and her brother. The lower court very properly held that J. P. Akers alone was liable as he alone bought the land. As to the champertous contract, we claim it was only void as to the parties to it and did not affect the plaintiff's right to recover for the fraud practiced on her. Weimhoff, &c. v. Rutherford, 17 Ky. Law Rep., 660.

OPINION OF THE COURT BY JUDGE BURNAM REVERSING ON THE ORIGINAL AND CROSS APPEAL.

The appellee, Josephine Martin, inherited from her father, Daniel Akers, a tract of land in Floyd county, Ky. In 1895 she sold and conveyed this land to her brother, Jacob

Akers for $800 cash. On the 8th of May, 1896, she insti-
tuted this suit against him, in which she alleges that she
was married and left Kentucky in the year 1875, and had
since lived in the State of Missouri, never having returned
to Kentucky; that several years before the institution of
this suit her father died, and a portion of the real estate
belonging to him was allotted to her; that she had never
seen the piece so allotted to her, and was unacquainted
with its value, and did not know anything about the
quality, character, or extent of the timber growing there-
on; that, after the land had been laid off to her, appellant,
who is her brother, and resided in the neighborhood, with-
out her knowledge or consent contracted to sell all of the
poplar timber standing on the land at an agreed price of
$5.00 per tree; that after making this contract sale he
came to her home in Missouri for the purpose of buying
the land; that before agreeing to sell she asked him about
the timber growing thereon, and its value, and that, to
deceive and defraud her, he falsely stated, in answer to
her inquiry, that there were only about 50 small trees on
the land, and they were worth nothing, and he represented
to her that $800 was about the salable value of the land;
that he fraudulently concealed from her that there were
about 210 poplar trees, which he had already contracted
to sell at $5.00 per tree; that she was induced to make the
sale by these false and fraudulent representations of her
brother; that the land in reality was worth more than
twice as much as the sum realized therefor. And she
asked judgment for $1,050, the value of the timber con-
tracted to be sold from the land by defendant, and for
all proper relief. Appellant, in his answer, in substance
admitted that he had contracted to sell the 210 poplar trees
on the land of appellee at $5.00 per tree before he went to

Missouri for the purpose of buying it, and that he did not disclose this fact to his sister. In the second paragraph of his answer he says that he purchased the land for himself and for his brother, George Akers, who was jointly interested with him in the sale of the standing trees thereon, and to whom he had since conveyed one-half of the land by deed; and he makes his answer a cross petition against George Akers, and asks that he be compelled to come in and make defense, and that, if plaintiff recovers anything from him, George Akers be adjudged to pay one-half of the amount recovered. The defendant, George Akers, admitted in his answer that he had agreed with his brother Jacob to purchase the land in partnership, and that his brother went to the State of Missouri to carry out the agreement, and that he furnished $400 of the purchase money, and that Jacob had subsequently made him a deed for one-half of the property. Subsequently appellant, Jacob Akers, filed his amended answer, in which he alleged that appellee had forfeited any right which she had to maintain this suit, for the reason that she had made a champertous contract with her brother, Floyd Akers, whereby she had agreed to give to him one-half of all the money which might be recovered by suit or compromise on account of the alleged deceit practiced upon her in the sale of the land, and that Floyd Akers had agreed to pay all of the costs growing out of the institution of any suit that might be necessary. Floyd Akers filed an answer in which he admitted that he had made the contract, but said that it had been subsequently rescinded, and the suit was prosecuted alone for the benefit of his sister.

Mrs. Martin and her two sons, Henry and William, all testify to the facts stated in their original petition; and she also testifies that, but for these fraudulent representations

made by her brother, she would not have sold the land
to him at all. Appellant, when interrogated upon this
point, admitted that before he bought the land he had con-
tracted to sell the timber growing thereon to one Adkins,
and that he afterward realized from that sale $950, and
that he did not communicate the fact of the sale to his sis-
ter, but denied that he represented to her that there were
only fifty small trees growing on the land, and claimed
that previous to that time his sister had offered to sell
the land for $800. It can not be doubted that appellant
deceived and overreached his sister in this transaction.
By his own admissions, he fraudulently concealed from her
the value of her property; and, by the testimony of herself
and her two sons, he did not stop at this, but made false
statements to her of the value and amount of the timber
growing thereon. And these statements were relied on by
her, and induced her to make the sale of her property.
"The law is well settled that the purchaser of property
does not commit fraud by failing to communicate to the
seller the knowledge of existing facts of which the seller
is ignorant, and the purchaser informed, although such
facts, if known, would operate directly to enhance the
value of the property. Whatever moralists may think of
this doctrine, the jurist is bound thereby." "Whilst de-
cisions generally admit these propositions, they are agreed,
on the other hand, that it is only silence which is permitted.
If, in addition to the party's silence, there is any statement,
word, or act on his part which tends affirmatively to a sup-
pression of the truth, to covering up or disguising the truth,
or to a withdrawal or distraction of the party's attention
from the real facts, then the line is overstepped, and the
concealment becomes fraud. The maxim is, 'Aliud est
celare, aliud tacere.'" See Pom. Eq. Jur. 901; Williams v.

Akers v. Martin and Others.

Beazley, 26 Ky. 580; Bowman v. Bates, 5 Ky. 50.  In other words, while a party may keep absolute silence, and violate no rule of law or equity, yet if he volunteers to speak, or to convey information which may influence the conduct of the other party, he is bound to tell the whole truth; and a false or fraudulent misrepresentation of a material fact which would be important for the vendor to know affords ample ground for the interposition of a court of equity to relieve against the consequences of such fraud.  In this case the poplar timber growing upon the lands of appellee constituted its chief value, and, while appellant might have maintained absolute silence with regard to the timber without committing a legal fraud, when he went further, and falsely misrepresented that there was no timber of this character on that land of any value, he committed a fraud against which a court of equity will relieve.  From his own testimony, after deducting every possible source of expense to which he was subjected, he realized at least $750 from his unconscientious and fraudulent misrepresentations.  While appellee, George Akers, was not present when the purchase was made, and did not participate in the false representations made to induce appellee to part with her property, yet he got the fruits of the purchase.  He furnished one-half of the money to pay for it, and was bound by and responsible for the fraudulent misrepresentations of his partner and agent, and must share his part of the liability. We think, therefore, that the judgment should be reversed upon the cross appeal of appellee, and that she is entitled to a judgment for $750 against Jacob Akers, and that he is entitled on his cross petition to a judgment against George Akers for one-half of this sum.

This is a proceeding by a vendor of land to recover damages for deceit practiced upon her by the vendee, and,

under section 215 of the statute, is exempted from the forfeitures declared by section 212, even if the testimony authorized the application of that principle. For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.