**L. R. COOKE CHEVROLET COMPANY,**
Inc., Appellant,

v.

**CULLIGAN SOFT WATER SERVICE OF
LEXINGTON, Inc., Appellee.**

Court of Appeals of Kentucky.

Sept. 23, 1955.

William B. Gess, Jack F. Mattingly, Stanley M. Saunier, Jr.; John G. Atchison, Jr., Lexington, for appellant.

Robert Hays, Lexington, William O. Hays, Winchester, R. P. Hobson, Louisville, amicus curiae, for appellee.

WADDILL, Commissioner.

On August 12, 1952, the appellee, Culligan Soft Water Service of Lexington, bought a new Chevrolet truck from the appellant, Cooke Chevrolet Company. After receiving delivery of the vehicle on August 28, 1952, appellee used it in its business until September 12, 1952, when it was damaged in an accident. Several days later appellee returned the damaged truck to the appellant and demanded return of the purchase price. Upon appellant's refusal to comply with appellee's demand, appellee brought this action against appellant claiming damages for breach of an implied warranty that the truck was reasonably suited for the purposes for which it was intended to be used because it was not free from mechanical defects. Upon trial, appellee recovered the sum of $2,414.17, which was the full purchase price of the truck.

The appellant urges that it was entitled to a directed verdict, because recovery was precluded upon an implied warranty by a written agreement executed by the parties which excluded implied warranties, and, also, because the damage to the truck was caused solely by the negligence of appellee's agent.

The purchase order, signed by the parties, contained their entire agreement with reference to this sale. In the pertinent part it reads:

"* * * It is expressly agreed that there are no warranties, expressed or implied, made by either the Dealer or

the Manufacturer on the Chevrolet Motor vehicles, chassis or parts furnished hereunder, except the Manufacturer's warranty against defective materials or workmanship, as follows:

" 'The Manufacturer warrants each new motor vehicle, including all equipment or accessories (except tires) supplied by the Manufacturer, chassis or part manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other waranties, expressed or implied, and all other obligations or liabilities on its part, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles.

" 'This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an Authorized Chevrolet Service Station in any way so as in the judgment of the Manufacturer to affect its stability and reliability, nor which has been subject to misuse, negligence or accident.

" 'The Dealer agrees to install any part or parts furnished under the Manufacturer's warranty above on the motor vehicle covered in this order without charge to the owner of such motor vehicles. * * *.' "

The evidence established that Henry Newell, the manager of appellee's company, accepted delivery of the truck on August 28, 1952. Thereafter, and until September 12, 1952, the truck was under appellee's exclusive control and was driven daily by its employees. During that time no complaint was made to appellant concerning the truck.

Edward Martin, aged 21, an employee of appellee who had operated the truck in question during the period appellee had owned it, testified that on September 12, 1952, while driving the truck en route from Winchester to Lexington, the front wheels of the truck began to wobble, causing him to lose control of the truck. Thereupon, the truck went off the road, ricocheted off a stone fence and came to rest in a pond located on privately owned property. The truck was considerably damaged. When Martin was interrogated concerning whether or not he had previously noticed any trouble in the steering apparatus of the truck, he stated:

"During that week the accident happened there was a little wobble in the front wheels, but I didn't say anything about it because I didn't think it was anything to say anything about. It was just a little wobble. It wasn't acting up very much."

Two witnesses testified that they saw Martin's accident, but could not say what caused the truck to leave the road, except that the truck was out of control.

E. N. Yeary, an experienced truck operator, testified that he examined the truck the day after the accident and found what he thought was undue play in the steering wheel, which he said would cause the truck to "shimmy." Several days later the wheels of the truck were taken off and the steering mechanism was further examined. The only additional information obtained thereby was that some rust was found on the brake drum of the right rear wheel.

There is no question raised as to the bona fides of the sales transaction between the parties; nor is there any suggestion that appellee's manager did not understand the significance of his act in making the purchase pursuant to the terms of the written agreement. Appellee's agent admitted that he possessed sufficient knowledge and had enough experience to know what kind of a

truck appellee desired to purchase for use in its business.

Appellee relies upon the terms of KRS 361.150 which provide in effect that there is no implied warranty as to quality or fitness of goods for any particular purpose except where the buyer makes known to the seller the particular purposes for which the goods are required, and it further appears that the buyer relies upon the seller's skill or judgment; or where there is an implied warranty by the usage of the trade, and the express warranty does not negative a warranty or condition that is implied unless it is inconsistent therewith. However, KRS 361.710 provides:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

The purchase order executed by the parties contains an express warranty which specifically negatives any implied warranty. Express disclaimers of implied warranties have received varying interpretations from our courts. See, Kentucky Law Journal, Vol. 42, page 286. A question concerning an express disclaimer arose in Myers v. Land, 314 Ky. 514, 235 S.W.2d 988, 990. There the plaintiffs had purchased from the defendant certain machinery with which they planned to manufacture merchantable concrete blocks. The contract of sale stipulated that:

"'* * * There are no understandings, agreements, representations or warranties expressed or implied, not specified herein respecting this order. * * *.'"

The only substantial warranties specified therein concerned defects of material and workmanship. However, the machinery was wholly inadequate for the purpose intended and would not manufacture merchantable concrete blocks. The court af-

firmed a judgment allowing a recovery upon the failure of consideration concept, saying:

"* * * to sell a man a machine for manufacturing a merchantable product that will not accomplish that purpose at all is a breach of the contract itself rather than a mere breach of warranty, * * *. If the machine is worthless for the purpose for which it was sold, there is a failure of consideration."

Also, see, White Motor Co. v. Johnson, Ky., 254 S.W.2d 931; Sparks v. Doss, Ky., 253 S.W.2d 245; and International Harvester Co. of America v. Bean, 159 Ky. 842, 169 S.W. 549.

■■■■: While we think the rule stated in Myers v. Land, 314 Ky. 514, 235 S.W.2d 988, was a proper application of the law to the facts and circumstances in that case, such a rule is not applicable in the instant case. Appellee concedes by the testimony of its agents that the truck in question was reasonably suitable for its intended use prior to the occasion upon which it was damaged. The only proof concerning a breach of warranty, implied or expressed, was that several days after the truck had been in use in appellee's business, its operator discovered a slight "shimmy" in its front wheels. Appellant was not given an opportunity to remedy the alleged defect as required by the sales contract. Appellee kept the truck in use after it discovered such alleged defective condition until it was involved in a wreck. In view of these facts we conclude that there had been no breach of a covenant or condition as would justify a recision of the contract on the theory of failure of consideration. Since the equities of the situation do not justify a recision of the contract, and inasmuch as the sales contract excluded all implied warranties the court should have directed a verdict for the appellant. James v. International Harvester Co., 294 Ky. 722, 172 S.W.2d 670; Frick Co. v. Wiley, 290 Ky. 665, 162 S.W.2d 190; Graves Ice Cream Co. v. Rudolph W. Wurlitzer Co., 267 Ky. 1, 100 S.W.2d 819; Black Motor Co.

v. Foure, 266 Ky. 431, 99 S.W.2d 177; Colt Co. v. Asher, 239 Ky. 235, 39 S.W.2d 263.

The judgment is reversed. The appellant having entered a motion for judgment notwithstanding the verdict, the court is directed to enter a judgment in favor of the appellant.