All sitting. All concur.
ENTERED: October 23, 2014.
/s/ John D. Minton, Jr.

**Jamison and Alicia ELENDT, Appellants**

v.

**GREEN TREE SERVICING, LLC, Patricia Holt, KSL Realty d/b/a Colonial Manor, and Laurie Murray, Appellees.**

No. 2013–CA–000698–MR.

Court of Appeals of Kentucky.

May 30, 2014.

Discretionary Review Denied by Supreme Court Oct. 15, 2014.

---

6. *Lareau v. O'Nan*, 355 S.W.2d 679, 681 (Ky. 1962).

7. *Price*, 261 S.W.3d at 485.

8. *Id.*

9. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

Randy J. Blankenship (argued), Erlanger, KY, for Appellants.

Van L. Sondgerath (argued), Covington, KY, for Colonial Manor for Appellees.

Jacqueline K. Heyman, Amy L. Eversole and Christopher M. Hill (argued), Frankfort, KY, for Green Tree for Appellees.

Before LAMBERT, MAZE, and MOORE, Judges.

## OPINION

MAZE, Judge:

This appeal arises from an order of the Kenton Circuit Court granting Appellee, Green Tree Servicing, LLC's (hereinafter "Green Tree") motion for summary judgment on Appellants' claims of fraud and violation of the Kentucky Consumer Protection Act (KCPA). As the evidence of record shows there to be genuine and unresolved issues of material fact concerning Appellants' claims, we reverse.

### Background

In February 2012, Appellants entered into a Purchase Agreement with Green Tree for the purchase of a used mobile home located in Erlanger, Kentucky, in a mobile home community owned and run by Appellee, Colonial Manor Mobile Home Estates ("Colonial Manor"). As part of the contract, the following was provided above Appellants' signatures:

THE ITEM DESCRIBED ABOVE IS SOLD AS IS AND WHERE IS WITHOUT WARRANTY OF GUARANTY, EITHER EXPRESSED OR IMPLIED, AS TO ITS MERCHANTABILITY,

ITS CONDITION OR THE SUITABILITY FOR PURPOSE, QUALITY, YEAR OF MANUFACTURE, SIZE OR MODEL.

AND

THIS MANUFACTURED DWELLING IS BEING SOLD ON AN AS–IS BASIS OR WITH ALL FAULTS BASIS, AND THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED DWELLING IS WITH THE BUYER. IF THE MANUFACTURED DWELLING IS FOUND TO BE DEFECTIVE AFTER PURCHASE, THE BUYER SHALL ASSUME THE ENTIRE COST OF ALL SERVICING AND REPAIR. THE SELLER, MANUFACTURER, DISTRIBUTOR OR RETAILER IS NOT RESPONSIBLE FOR ANY COST OF SERVICING AND REPAIR.

After moving into the mobile home, Appellants alleged that they then discovered the "hidden mold contamination" inside the home. When Green Tree refused to give Appellants relief from the Purchase Agreement, Appellants filed suit.

During litigation of the case, Appellants filed affidavits and other discovery asserting that employees of Colonial Manor made representations to them concerning the condition of the mobile home prior to purchase. Specifically, the Appellants alleged that Patricia Holt stated during a phone conversation that the mobile home had been inspected and was in "move-in condition." Appellants also averred that Laurie Murray showed them the mobile home, walked with them throughout the property, pointed out features, and reiterated the home's "move-in" condition. It was further alleged that this latter event was conducted in a manner "similar to the way a realtor would display a home to someone." Appellants also stated that the defects in the property were not apparent upon inspection.

In their respective Answers and subsequent discovery, Green Tree and Colonial Manor disputed these allegations, contending that Holt made no such representations, and that Murray, as well as a third employee, Mary Beth Grant, merely unlocked the door for the Appellants, did not tour the home with the Appellants, and also made no representations concerning the "move-in" ready condition of the home. Green Tree further asserted that regardless of any representations, those alleged to have made these representations did not work for Green Tree and did not have even apparent authority to make such statements on Green Tree's behalf.

In January 2013, asserting these and other arguments, Green Tree moved for summary judgment on Appellants' fraud and KCPA claims. Appellants filed a memorandum in opposition to Green Tree's motion to which they attached several exhibits. One such exhibit was an inspection report completed by an inspector in 2011 at Green Tree's request and disclosed to Appellants during discovery. In the "Comments" section of the report, the inspector noted, "HOME IS POOR[.] ... CEILING HAS WATER DAMAGE & MOLD IN BEDROOM 2[.] ...." (emphasis in original). Appellants also attached the aforementioned affidavits.

After the matter had been fully briefed, the trial court granted Green Tree's motion for summary judgment on both of Appellants' claims. The trial court emphasized that the Purchase Agreement, to which the Appellants agreed, clearly stated that the property was sold "as-is" and therefore, all implied warranties had been waived. The court specifically referred to the 2011 inspection, stating that the report did not demonstrate that Green Tree, or anyone else, knew that there was mold

inside the home. The trial court concluded that these facts precluded Appellants' fraud and KCPA claims as a matter of law and that no genuine issues of material fact remained. Appellants now appeal from that order.

## Standard of Review and Summary Judgment Standard

The standard of review governing an appeal of a summary judgment is well settled. Since a summary judgment involves no fact finding, this Court's review is *de novo* in the sense that we owe no deference to the conclusions of the trial court. *Blevins v. Moran,* 12 S.W.3d 698, 700 (Ky.App.2000).

"The proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). In essence, for summary judgment to be proper, the movant must show that the adverse party cannot prevail under any circumstances. *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985). Therefore, we will find summary judgment appropriate only "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03.

## Analysis

On appeal, Appellants ask us to reverse the trial court's grant of summary judgment on two claims: The underlying allegation of fraud against Green Tree and Colonial Manor, as well as an alleged viola-

tion of the KCPA. Hence, we examine the trial court's ruling regarding both claims through the lens of the standard of review and summary judgment standard provided *supra.*

## I. Appellants' Claim of Fraud

On appeal, Appellants confront us with a plethora of legal authority establishing the legal prohibition against fraud in the inducement and fraud by omission, as well as the equitable principle that a party cannot use the so-called "as-is" provision of a contract to shield his fraudulent representations. For example, Appellants emphasize the "stern but just maxim of law that fraud vitiates everything into which it enters." *Radioshack Corp. v. ComSmart, Inc.,* 222 S.W.3d 256, 260 (Ky.App.2007) (*quoting Veterans Service Club v. Sweeney,* 252 S.W.2d 25, 27 (Ky.1952)). This authority is relevant and well taken. However, it can be of little consequence if there remains no genuine issue of material fact to which it can be applied. Therefore, we must also look to the evidence of record regarding what, if any, representations Green Tree made to Appellants, and of what defects in the home Green Tree was aware at the time.

### A. Facts Disputed in the Record

■ To prove their claim of fraud to a finder of fact, Appellants must prove that Green Tree and Colonial Manor: 1) made a material representation; 2) which was false; 3) which was known to be false or was recklessly made; 4) and which was made to induce Appellants to act; 5) that Appellants acted in reliance upon the misrepresentation; and 6) which caused injury to Appellants. *See Flegles, Inc. v. TruServ Corp.,* 289 S.W.3d 544, 549 (Ky.2009) (*citing United Parcel Service Company v. Rickert,* 996 S.W.2d 464 (Ky.1999)). The issues raised on appeal primarily concern the first three of these elements.

First, Appellants contend that two different individuals walked with them through the home, a process which they contend took an hour. Green Tree and Colonial Manor refuted this allegation, asserting that Grant and Murray merely opened the door for the Appellants, who walked through and around the home alone, a process it contends took only fifteen minutes.

■ In addition, and seemingly of more import, Appellants contend that during these walks through the home, and at other points during the transaction, Holt, Grant, and Murray made representations that the home was "move-in" ready and problem-free, and that they gave the impression that they had been authorized by Green Tree to handle the sale of the home. Green Tree and Colonial Manor both dispute that any representations were made to Appellants concerning the home's "move-in" ready or defect-free condition. Green Tree further contends that none of the Colonial Manor employees possessed even implied or apparent authority to make such representations on its behalf. These disputed facts, once resolved, would speak directly to whether Holt, Grant, and Murray had apparent authority and whether, under that authority, they made representations to Appellants—a key element in the Appellants' fraud claim.

In their motion, and again on appeal, Green Tree greets the question of apparent authority with the conclusory statement that neither Holt nor Grant nor Murray were employees of Green Tree and possessed no authority to make such representations. This is insufficient, on summary judgment, to overcome the fact that Appellants' belief that these individuals had at least apparent authority from Green Tree, or were agents thereof, in the sale of the home has some support in the record. E-mail and fax transmissions show that all purchase offers, counter-offers, and other negotiations, as well as information needed for execution of the Purchase Agreement, went from Appellants, through Murray or Holt, to a representative of Green Tree, and back again. Nevertheless, the allegation of apparent authority is a contention which Green Tree and Colonial Manor obviously and vociferously deny. Therefore, the crucial question of agency and authority, whether actual or apparent, remains unresolved, as so does the elemental question of whether Green Tree made the representations in question.

At least one issue of fact which concerns another element vital to the Appellants' claim of fraud remains unresolved as well. Appellants asserted before the trial court that they did not observe any mold during their walk-through of the home and that Green Tree was in a superior position to know about the mold and therefore that its representations of the home's condition were false. They base this, in part, upon the 2011 inspection conducted at Green Tree's request prior to its contact with the Appellants. In seeking summary judgment, and on appeal, Green Tree countered this with the argument that the mold in the home was apparent at the time of Appellants' walk-through of the home [1] and that Green Tree should not be held responsible for Appellants' failure to employ their own inspector. Hence, whether the mold was a latent defect or whether the Appellants were on notice of it prior to sale also remains at issue in the record; and the resolution of the dispute surrounding this fact informs the answer to another

1. We note that, at oral argument, Green Tree conceded that whether the mold was apparent is not known and that during the 2011 inspection, the inspector found the mold on the back, or concealed, portion of the drywall.

question elemental to the Appellants' claim of fraud: whether Green Tree was in a superior position to know the representations made by their alleged agents were false.

Also on the subject of Green Tree's knowledge, it bears repeating that the inspection report, which was attached to Appellant's memorandum opposing summary judgment, expressly stated: "HOME IS POOR[.] ... CEILING HAS WATER DAMAGE & MOLD IN BEDROOM 2[.]...." (emphasis in original). Based upon this, we must voice our strong disagreement with the trial court's subsequent statement that "nothing in [the October 23, 2011 inspection] report would serve to put anyone on notice of mold issues...." The record, and especially the inspector's report, clearly refutes this conclusion. While this statement does not singularly resolve the remaining question of latency, it does tend to indicate the depth of Green Tree's knowledge at the time of the alleged representations concerning the home's supposed "move-in" ready condition. Furthermore, while the trial court's conclusion regarding the inspector's report may be the product of mere oversight, the unequivocal statement in the inspection report leads us to conclude that the trial court's grant of summary judgment regarding Appellant's fraud claims was based upon at least one erroneous finding regarding a key fact.

### C. Materiality of the Disputed Facts

It is not difficult to locate within the record the several facts which remain at issue. Even Colonial Manor concedes on

appeal that "many, many disputed facts" remain unresolved. The more challenging question at the heart of this case is whether these several disputed facts can possibly be material given that the Purchase Agreement contained an "as-is" clause. We hold that they can.

A good starting point in the law is that which the Uniform Commercial Code most simply states: an expectation and an obligation of good faith accompanies all contracts. *See* KRS 355.1–304. This obligation cannot be disclaimed by agreement or language of the contract. KRS 355.1–302. From here, we look more specifically to the statutory language concerning "as-is" clauses. KRS 355.2–316(3)(a) states, "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty ... [.]"

On appeal, Green Tree proffers the case of *Roberts v. Lanigan Auto Sales,* 406 S.W.3d 882 (Ky.App.2013)[2] as disposing of both Appellants' claim of fraud and their KCPA claim. In *Roberts,* the plaintiff purchased a used vehicle from a car lot pursuant to a purchase agreement which stated that the vehicle was sold "as-is." Subsequently, the plaintiff obtained a report which showed that the vehicle had suffered prior damage which the car lot had not disclosed at the time of the sale. Based on this, plaintiff sued the car lot for, among other things, "fraud by omitting, suppressing, and concealing the vehicle's prior damage and accident history in order to induce

**2.** This case became final on September 25, 2013, after Appellants filed their brief but before Appellees filed their briefs. Immediately prior to oral argument, Green Tree requested leave of this Court to reference the case while admitting that it did not meet the criteria for supplemental authority. Over Ap-

pellants' objection, the Court granted Green Tree leave to supplement and Appellants the opportunity to address the case both in its subsequent oral argument and in a written memorandum of law filed and received by this Court seven days later.

Roberts into purchasing the vehicle." *Roberts,* 406 S.W.3d at 883. The defendant moved for dismissal on the grounds that the plaintiff had not alleged any actual representation by defendant regarding the vehicle's condition. The trial court denied plaintiff's motion to amend and this Court affirmed, stating that the "as-is" clause shifted the risk of the sale and that, in agreeing to it, plaintiff "agreed to make his own assessment of the condition of the vehicle. . . ." *Roberts* at 885.

We first point out a key factual distinction between *Roberts* and the present case. Because the trial court denied his motion to amend his complaint, the plaintiff in *Roberts* did not allege that the car lot made any representation regarding the condition or history of the car. This was a crucial element which the present case, unlike *Roberts,* does not lack; and it is a distinction of fact which Kentucky law has held to be important: "while a party may keep absolute silence, and violate no rule of law or equity [as in *Roberts* ], yet if he volunteers to speak, or to convey information which may influence the conduct of the other party, he is bound to tell the whole truth[.]" *Akers v. Martin,* 110 Ky. 335, 61 S.W. 465, 466 (1901).

■ Breach of a contractual duty to disclose or of an express or implied warranty is not what is alleged here. Had the Appellants proceeded merely under a claim of breach of warranty, the "as-is" nature of the Purchase Agreement would almost certainly preclude their claim. However, Appellants allege the tort of fraud by misrepresentation, the elements of which we have already enumerated and the assertion of which neither the Uniform Commercial Code, nor our ruling in *Roberts* outright prohibits based simply upon the "as-is" nature of the contract. Citing to the provision we quote *supra,* even the *Roberts* Court correctly stated that a party may find relief from a contract containing an "as-is" clause when "circumstances indicate otherwise[.]"

In sum, we conclude, based on the allegations of intentional and potentially troubling conduct by Green Tree, that the circumstances of the present case "indicate otherwise." Though Appellants may be said to have adopted the risk of many eventualities upon agreeing to purchase this mobile home "as-is," it cannot be said that they assumed the risk that they were being intentionally and actively deceived. The trial court's standard of review required it to view the record, and the above disputed facts, in a light most favorable to Appellants' claim that agents of Green Tree did, in fact, make misrepresentations concerning the condition of the mobile home. The court was then required to hold Green Tree to the standard of truth imposed by Kentucky's common law, *see, e.g., Akers, supra,* as well as that of good faith imposed by its statutory authority. *See* KRS 355.1–304. Failure to do so constituted error.

At last, based on the facts and law above, we conclude that the issues of fact which we have already provided are apparent from the record; all are contested; and, despite Green Tree's assertions and the trial court's conclusion to the contrary, all are material, as they speak directly to at least one element essential to Appellants' claim of fraud and they do so despite the "as-is" nature of the contract.

## II. Appellants' KCPA Claim

Appellants' suit against Green Tree and Colonial Manor also alleged that both companies made "unfair, false, and deceptive representations" in connection with the sale of the mobile home. In its motion for summary judgment on the KCPA claim, Green Tree again denied making any such representations and again emphasized that

the contract's "as-is" clause excluded all warranties. Therefore, they argued, Appellants could not possibly prove their KCPA claim.

The trial court noted in its opinion that the KCPA (KRS 367.110 *et seq.*) makes it unlawful to commit "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce...." KRS 367.170(1). The statute goes on to define "unfair" as "unconscionable." KRS 367.170(2). The trial court further noted that the law of contracts in Kentucky, which has adopted the Uniform Commercial Code and specifically addresses the exclusion of implied warranties, "does not automatically prevent a claim under KRS 367.170." Despite these facts and these observations, the trial court held that the "as-is" provision, and Appellants' assent to it, precluded their KCPA claim and entitled Green Tree to judgment as a matter of law. In support of its conclusion, the trial court cited exclusively to *L.R. Cooke Chevrolet Co. v. Culligan Soft Water Service of Lexington,* 282 S.W.2d 349 (Ky.1955), which held that the facts of the case and "the equities of the situation [did] not justify a rescission of the contract, and inasmuch as the sales contract excluded all implied warranties," the defendant was entitled to a directed verdict.

Nevertheless, the trial court's holding and the brief reasoning for it confound us. Of particular concern to us regarding the trial court's analysis is the fact that *L.R. Cooke Chevrolet* utilized the long-since repealed Uniform Sales Act in its analysis. More imperatively, *L.R. Cooke Chevrolet* concerned not a claim of fraud or material misrepresentation,[3] but one of the seller's unintended "breach of an implied warranty

that the [vehicle] was reasonably suited for the purposes for which it was intended to be used." The facts at issue in this case, including the allegation of intentional and potentially unconscionable conduct by Green Tree, render this distinction significant and unavoidably fatal to the trial court's conclusion that *L.R. Cooke Chevrolet* compelled summary judgment in this case. Furthermore, the alleged conduct prevents us, once again, from applying *Roberts* as Green Tree would have us apply it to Appellants' KCPA claim. Once again, the facts of this case distinguish themselves in too crucial a manner to render *Roberts* clearly dispositive.

Overall, we find the trial court's justification for granting summary judgment on Appellants' KCPA claim lacking. Contrary to the trial court's decision, the fact that KRS 355.2–316 "does not automatically prevent a claim under" the KCPA, coupled with the many key issues of fact remaining, which we have outlined at length *supra,* lead us to conclude that Green Tree did not meet its burden of proof in requesting summary judgment on the Appellants' KCPA claim.

**Conclusion**

In relying heavily upon the "as is" nature of the contract in this case, as well as Appellants' opportunity to inspect the home themselves prior to purchase, Green Tree's arguments, along with the trial court's reasoning, amount to the general and oft-recited precept of *caveat emptor.* However, *caveat emptor* is not enough in this case. Rather, it is an inadequate and oversimplified retort to the multitude of

---

**3.** As the Court helpfully noted, "[t]here is no question raised as to the bona fides of the sales transaction between the parties; nor is there any suggestion that appellee's manager did not understand the significance of his act in making the purchase pursuant to the terms of the written agreement." 282 S.W.2d at 350.

genuine questions of material fact located within the record before us.

For the reasons stated, we conclude that genuine issues of material fact remain and that Green Tree was not entitled to judgment as a matter of law on either of Appellants' claims. The order of the Kenton Circuit Court is reversed and remanded for further proceedings.

ALL CONCUR.