[L. A. No. 4943. Department One.—August 29, 1919.]

## C. H. SMITH, Appellant, v. J. O. ROYER et al., Respondents.

[1] NEGLIGENCE—PERSONAL INJURIES—ATTACK BY VICIOUS DOGS—OWNERSHIP OF ANIMALS NOT AN ISSUE.—In an action to recover damages for personal injuries sustained as a result of an attack by vicious dogs, the question of ownership of the animals is immaterial, since it is sufficient to prove that they were harbored and kept by the defendants.

[2] ID.—RECOVERY OF DAMAGES—EVIDENCE.—In such an action it is necessary for the plaintiff to prove that the dog bit him, that it was vicious and accustomed to bite people, that this fact was known to the defendant, and that the dog was harbored and kept by the defendant.

[3] ANIMALS—OWNER OR KEEPER.—If the head of a family, having possession and control of a house or premises, suffers or permits an animal to be kept thereon, he may be regarded as the keeper.

[4] ID.—IMPUTED KNOWLEDGE OF VICIOUS NATURE OF DOGS.—Actual notice to the owner or keeper of a dog of its vicious characteristics is not necessary to make him liable for the acts of the dog, and notice to or knowledge of his wife, while she was with his knowledge in the custody or control of the animal, or to his agent in such control, is sufficient.

[5] TRIAL—JURY—CONFLICT OF EVIDENCE—MOTION FOR NEW TRIAL—REVIEW OF EVIDENCE.—In a jury trial a party is entitled to two decisions on the evidence—one by the jury and one by the trial court, and the court is not bound by a conflict in the evidence.

[6] APPEAL—ORDER GRANTING NEW TRIAL—REVIEW OF EVIDENCE.—On an appeal from an order vacating and setting aside a judgment and granting a new trial, in passing upon the question of the insufficiency of the evidence to support the order, the appellate court is not to weigh the evidence, but only to consider its legal sufficiency as distinguished from its probative force and accept a substantial conflict as conclusive.

[7] VERDICT—EXCESSIVE DAMAGES—REVIEW—RULE.—It is only where the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment, that the court is at liberty to interpose its judgment as against that of the jury.

[8] NEW TRIAL—DISCRETION—APPEAL.—The granting of a new trial rests very largely in the trial court, and such an order will not be disturbed if it can be upheld upon any ground shown by the record.

[9] ID.—REVIEW OF GROUNDS OF MOTION FOR NEW TRIAL.—On an appeal from an order granting a new trial the entire record will be examined to determine whether such order can be supported upon any ground set out in the notice of motion, notwithstanding the respondents limit their contention to certain grounds only; and where the order cannot be supported on any ground, it must be reversed.

APPEAL from an order of the Superior Court of Orange County vacating and setting aside a judgment and granting a new trial. W. H. Thomas, Judge. Reversed.

The facts are stated in the opinion of the court.

Tipton & Cailor for Appellant.

Williams & Rutan for Respondents.

LAWLOR, J.—This is an appeal by the plaintiff from an order vacating and setting aside the judgment and granting a new trial.

Action was brought by the plaintiff in the superior court of Orange County against the defendants to recover damages

for personal injuries sustained as a result of an attack by two vicious dogs alleged to have been harbored and kept by the defendants, who, it is further alleged, knew of the vicious characteristics of the dogs and that they were accustomed to bite people. The complaint prayed for damages in the sum of $2,550. The case was tried by jury and a verdict in favor of the plaintiff was rendered in the sum of seven ·hundred dollars. Judgment was entered on the verdict with costs to the plaintiff amounting to $36.65.

On January 20, 1914, the plaintiff, a man seventy years of age, while riding his bicycle along the sidewalk in front of the "Royer Place" in the city of Anaheim, was attacked by two dogs, a St. Bernard and a bull terrier, which rushed out from the Royer place. The St. Bernard sprang upon the plaintiff and ·barked at him in a threatening manner, while the smaller dog, the bull terrier, seized the plaintiff by the calf of his right leg, tearing his clothes and inflicting a painful wound. Following the attack the plaintiff was confined to his home for a period of three weeks suffering from the wound in his leg and from a severe nervous shock. The plaintiff was not able to walk without experiencing pain from the bite for more than three months, and he testified at the trial, more than two years after the injury, that he was still suffering somewhat from the nervous shock.

No reason was assigned for ordering a new trial, but it was stated that it was "not on the ground that the jury violated the instructions of the court." However, in their notice of motion to vacate and set aside the judgment and for a new trial the defendants set out the following statutory grounds: 1. Newly discovered evidence material to the defendants, which they could not with reasonable diligence have discovered and produced at the trial; 2. Excessive damages appearing to have been given under the influence of passion or prejudice; 3. Insufficiency of the evidence to justify the verdict; 4. That such verdict is against law; 5. Misconduct of the jury; 6. Errors in law occurring at the trial and excepted to by the defendants.

The record discloses that the defendants, in arguing the motion, urged but two points; 1. Excessive damages, and, 2. Insufficiency of the evidence. The arguments of the defendants in their brief on appeal are also confined to these two points.

1. The defendants contend that the "evidence was either conflicting upon material issues, or there was no evidence to support certain material issues necessary for the plaintiff to prove." In this connection the defendants point out that the evidence shows that there were two St. Bernard dogs on the place, one belonging to the defendant, J. O. Royer, the other to his son-in-law, Walter Olmstead, so that the St. Bernard which attacked the plaintiff may or may not have belonged to the defendant, J. O. Royer, while the other, the bull terrier, was owned by Max Royer, the adult son of the defendants. Hence, they argue that since it was admitted by the plaintiff that it was the bull terrier alone which did the biting, they are not responsible for the damage done by this dog because he did not belong to them. In other words, the position of the defendants is that before liability can be established in such a case one of the things which must be proved is that the defendant is the owner of the dog. [1] The contention ignores the element of damage which may have been caused by the St. Bernard, but, even assuming that the legal injury is to be limited to the damage caused by the bull terrier, and that the ownership of the bull terrier was in the son of the defendants, the fact of ownership would be immaterial, and we must presume in the absence of such a specification in the order that the new trial was not granted upon that ground. This would also be true as to the ownership of the St. Bernard, which by its barking and threatening manner, it was alleged, contributed to the injury. The rule of decision in this and other jurisdictions is against the contention of the defendants. [2] It has been held in similar cases that in order to recover damages it is necessary to prove: 1. That the dog bit the plaintiff; 2. That the dog was vicious and accustomed to bite people; 3. That this fact was known to the defendant; 4. That the dog was *harbored* or *kept* by the defendant. The question of ownership is not an issue in such cases. (*Wilkinson* v. *Parrott*, 32 Cal. 102; *Strouse* v. *Leipf*, 101 Ala. 433, [46 Am. St. Rep. 122, 14 South. 667, 23 L. R. A. 622, and cases there cited].) Hence, any insufficiency in the evidence to establish the ownership of the dogs was not material, and could not properly have been made the basis of an order granting the new trial.

But the defendants go a step further and cite the record that Max Royer testified that he owned the property where

these dogs were kept—that it was his home. From this it is argued that he alone would be responsible for the injury, since it was his dog, kept on his premises, which did the biting. Max Royer did testify that he owned the place where the dogs were kept and that it was his home, but he also testified that it was the home of his mother and father; that his father had deeded to him, in 1910, the part of the property upon which the house stood, and that the title had been in his name since that time; that his brother-in-law, Walter Olmstead, was the manager or foreman of the ranch known as the Royer place, twenty acres of which belonged to the Anaheim Investment Company; that he himself did not run the ranch or in any way exercise control over it, but that Mr. Olmstead took his orders from J. O. Royer, defendant herein; and that at the time the plaintiff was attacked by the dogs he, Max Royer, was away at school. Therefore, the contention of the defendants that there was a conflict or an insufficiency in the evidence to establish the fact that the defendants kept and harbored the dogs is without foundation. [3] It has been held that if the head of a family, having possession and control of a house or premises, suffers or permits an animal to be kept on the premises, he may be regarded as the keeper. (3 Corpus Juris, 106.)

The defendants further urge that there is no evidence establishing or tending to establish the fact that the dogs which attacked the plaintiff on January 20, 1914, were the same dogs which other witnesses had testified were kept on the Royer place and which dogs were of a vicious nature. There is no merit in this contention. It was established by the testimony of witnesses Max Royer, J. L. Thompson and the plaintiff that certain dogs answering to the description of the ones which caused the injury to the plaintiff had been on the ranch for two or three years prior to January 20, 1914. This evidence stands uncontradicted.

The defendants further contend that there is no evidence that the defendant, J. O. Royer, ever had any knowledge of the vicious character of any of the dogs. It is true that there is no direct evidence that the defendant, J. O. Royer, was ever personally notified that the dogs on his place were accustomed to run out and bark at and attack people. But it seems to us idle to assume, in view of the fact of his residence on the place and the other evidence, that J. O. Royer did not have

personal knowledge of the vicious propensities of the dogs.
[4] Moreover, actual notice to the owner or keeper of a
vicious dog is not necessary; notice to or knowledge of his
wife, while she was with his knowledge in custody or control
of the dogs, or to his agent in such control, is sufficient. (2
Cyc. 378.)

There is a partial conflict in the evidence as to whether
Mrs. L. Royer had personal knowledge or was notified of the
vicious nature of the dogs. What we have said touching the
personal knowledge of J. O. Royer, applies with increased
force to his wife, who, according to the testimony of the
plaintiff and the witness Thompson, was notified of previous
attacks by the animals. Plaintiff testified that on one occa-
sion a few months before he was injured, while he was riding
by the Royer place on his bicycle, these same dogs "dived"
out at him and that Mrs. Royer was standing on the side-
walk and prevented them from doing him any harm at that
time by calling them off, and that he had then told Mrs.
Royer that the dogs were dangerous and that they should be
tied up or otherwise taken care of. Mrs. Royer denied that
such an incident had ever occurred. She testified that to her
knowledge she had never seen the plaintiff in her life until he
was pointed out to her in the courtroom. Plaintiff attempted
further to show that the defendant, J. O. Royer, had con-
structive notice through his agent, Mr. Olmstead, the foreman
of the ranch. In this behalf, John Kellenberger, the city
marshal of Anaheim, testified that he had visited the Royer
place, as deputy assessor, more than two years before Janu-
ary 20, 1914, and that at that time he had seen two dogs there;
that they had rushed upon him in a threatening manner, and
that Mr. Olmstead had called them off. One of these dogs
was a St. Bernard; the other a small white Spitz. There is
no direct evidence of identity between the dogs which at-
tacked Mr. Kellenberger and those which inflicted the injury
on the plaintiff, unless such identity may be inferred from the
fact that two St. Bernards were kept on the place, and that
on each of the two occasions the attacking dog was accom-
panied by a St. Bernard. The testimony of Mr. Thompson
that he called at the Royer place in August, 1913, and while
there was attacked by dogs answering the description of those
that injured the plaintiff, stands uncontradicted. The wit-
ness testified that he had been employed as a driver for the

Standard Oil Company; that in this capacity he had often visited the Royer place to deliver oil; that on such an occasion in August, 1913, he was attacked by three dogs—two large St. Bernards and a white bulldog; that the three dogs set upon him, and that the bulldog bit his hand, while one of the St. Bernards bit his leg, the other St. Bernard tearing his clothes but doing no damage otherwise; that after he had kicked himself free from the dogs Mrs. Royer came out and took him into the house and administered first aid to his injuries; that as a result of this attack he was laid up for three weeks. Mr. Thompson further testified that he had occasion to pass the Royer place several times after that during the year 1913, and that on each of these occasions he saw the same dogs about the place; that the last time he had been by the place was in December, 1913, and that he had seen the same dogs there at that time. This would seem to be sufficient to establish the fact, through the knowledge of his wife, that defendant J. O. Royer knew the vicious character of the dogs kept on the place, and, from the description, that these were the same dogs which attacked the plaintiff, inflicting the injury complained of.

The evidence shows, without conflict, that Mrs. Royer was in charge of the premises and had control of the dogs, and that J. O. Royer was the head of the household, with authority over the premises superior to that of his wife or of the foreman, Olmstead. If either the wife or the foreman, in the exercise of their functions as custodians, obtained knowledge of the vicious character of the dogs, it was their duty, respectively, to inform their superior, J. O. Royer, of the fact. Their knowledge, so obtained of that fact, is imputed to him and he is chargeable therewith. The fact that they both had knowledge of the vicious nature of the dogs, as has been shown already, was established by uncontradicted evidence. There was, therefore, no cause for granting a new trial to J. O. Royer on the ground that the evidence was insufficient to charge him with that knowledge. And, of course, there was no such cause respecting Mrs. Royer, who was also a defendant.

We have reached the conclusion that the contention of the defendants that the order granting a new trial was made upon the ground of the insufficiency of the evidence cannot be supported. [5] In a jury trial a party is entitled to two de-

cisions on the evidence—one by the jury and one by the trial court, and the trial court is not bound by a conflict in the evidence. (*Dickey* v. *Davis*, 39 Cal. 565; *Curtiss* v. *Starr*, 85 Cal. 376, [24 Pac. 806]; *Bates* v. *Howard*, 105 Cal. 173, [38 Pac. 715]; *Condee* v. *Gyger*, 126 Cal. 546, [59 Pac. 26]; *Green* v. *Soule*, 145 Cal. 96, [78 Pac. 337].) **[6]** In passing upon the question before us, we are not to weigh the evidence but only to consider its legal sufficiency as distinguished from its probative force and accept a substantial conflict as conclusive upon us. After examining the evidence, we find that there is no substantial conflict on the question of the liability of the defendants. It has not been questioned that the plaintiff was injured by dogs kept and harbored by the defendants on the premises where they resided. The defendants offered no evidence that the dogs were not vicious. Indeed, with the exception of the denial of Mrs. Royer that plaintiff was once pounced on by the dogs in her presence, the evidence that the animals were vicious and had previously attacked persons stands uncontradicted. The only dispute in the evidence is whether the defendants had *knowledge* that the dogs were accustomed to attack and bite people. On this question we do not think it can be maintained that there was a substantial conflict. From the evidence it is inconceivable to us that either the jury or the trial court believed that the defendants did not have knowledge, within the meaning of the decisions, that the dogs had vicious propensities and were accustomed to attack people. Here, according to the evidence, we have the case of a man and his wife living together on a place where, for several years, they kept and harbored vicious dogs, and yet it is insisted that the evidence does not show that they knew of the dangerous propensities of the animals. In our view, the proof of scienter is so complete that it would involve a waste of effort to discuss the argument on behalf of the defendants on the subject. As already pointed out, there are some discrepancies in the testimony as to identity between the dogs that figured in previous attacks and those that injured the plaintiff, but the absence of complete harmony in the testimony on this point, in view of the fact that it is not every individual who can distinguish the different species of dogs, cannot, any more than the contradiction of Mrs. Royer of the testimony of the plaintiff as to the action of the dogs in her presence on a previous occa-

sion, be held to constitute a substantial conflict in the face
of the inherent probabilities arising from the evidence bring-
ing liability home to the defendants for the injury. And the
contention that the trial court disagreed with the jury as to
the facts is, in our opinion, equivalent to a declaration that
the former disregarded the evidence.

An examination of the evidence precludes the suggestion
that the new trial was granted upon the ground of excessive
damages, the second point urged by the defendants. Assum-
ing that the trial court believed that the plaintiff was entitled
to recover, we find no warrant for the conclusion that it
deemed a verdict for seven hundred dollars disproportionate
to the injury suffered. As we have stated, the plaintiff was
an old man seventy years of age at the time of the injury;
he was confined to his home for a period of three weeks, dur-
ing which time his wound was dressed twice a day by a
trained nurse, and daily for three weeks thereafter, and it
was more than three months before he could walk without
experiencing pain, and he sustained a severe shock, produced
partly by his dread of hydrophobia, from which shock he
was still suffering at the time of the trial. It was said in
*Harrison* v. *Sutter Street Ry. Co.*, 116 Cal. 156, [47 Pac.
1019], approved in *Zibbell* v. *Southern Pacific Co.*, 160 Cal.
237, [116 Pac. 513]: [7] "It is only where the verdict is so
grossly disproportionate to any reasonable limit of compen-
sation warranted by the facts, as to shock the sense of justice,
and raise at once a strong presumption that it is based on
prejudice or passion rather than sober judgment, that the
judge is at liberty to interpose his judgment as against that
of the jury."

We must hold, therefore, that the trial court did not view
the verdict of seven hundred dollars as "grossly dispropor-
tionate to any reasonable limit of compensation warranted by
the facts," nor "based on prejudice or passion rather than
sober judgment."

[8] The granting of a new trial rests very largely in the
trial court, and such an order will not be disturbed if it can
be upheld upon any ground shown by the records. (*Hitch-
cock* v. *Rooney*, 171 Cal. 285, [152 Pac. 913], and cases there
cited.) [9] Hence, notwithstanding the defendants limited
their contention on appeal to the two grounds herein dis-
cussed, we have examined the entire record in order to de-

termine whether the order can be supported upon any ground, and none appearing to us, the order must be reversed.

Order reversed.

Shaw, J., and Olney, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J.