[Civ. No. 6194. Third Appellate District.—October 23, 1939.]

CHARLES LOMORI AND SON (a Copartnership), Appellant, v. GLOBE LABORATORIES (a Corporation), Respondent.

Heim Goldman, Richard M. Lyman, Jr., and Harold A. Block for Appellant.

Dockweiler & Dockweiler for Respondent.

THOMPSON, Acting P. J.—The plaintiff recovered judgment for $4,500, pursuant to the verdict of a jury, for damages for alleged breach of warranty, resulting in the loss of 466 hogs from cholera. A new trial was granted on the specified ground of the insufficiency of the evidence to support the verdict and judgment. From that order the plaintiff has appealed.

The complaint is couched in two counts. The first cause of action is based on an alleged breach of warranty printed in an advertising circular, accompanying the purchase of cholera virus and serum in which the plaintiff asserts the defendant guaranteed the vaccine would absolutely render hogs immune from cholera. The second count sought to recover damages for the loss of 466 hogs alleged to have died from cholera, on the ground of defendant's negligence in compounding and preparing hog cholera virus and serum which were purchased and used by the plaintiff. The cause was tried with a jury. When the plaintiff's evidence was closed, upon motion for a nonsuit, by consent of the plaintiff it was granted as to the second count and denied as to the first cause of action. A verdict of $4,500 was returned on the first count in favor of the plaintiff. Judgment was rendered accordingly. A motion for new trial was presented on several grounds. It was granted on the specified ground

of the insufficiency of the evidence to support the verdict and judgment.

When a motion for new trial is made on several statutory grounds, and it is granted on the specified ground of insufficiency of the evidence, the appellate court is not confined to the ground stated by the trial court, but may uphold the order on any other ground included in the motion for new trial. (*Smith* v. *Royer*, 181 Cal. 165 [183 Pac. 660] ; *Reilley* v. *McIntire*, 29 Cal. App. (2d) 559 [85 Pac. 169] ; 2 Cal. Jur. 816, sec. 478.) The respondent does not stress any errors at the trial, as authority for granting a new trial, other than that of the insufficiency of the evidence, and we shall therefore confine our attention to that feature of the appeal alone.

The evidence shows that the plaintiff maintained a hog ranch in South San Francisco, where it owned 2,000 pigs. In the fall of 1935 some of its hogs exhibited symptoms of an ailment. The ranch was visited by a salesman representing the Globe Laboratories, engaged in the preparation, compounding and sale of medicines, viruses and serums for vaccinating and treating diseased animals. The laboratory maintained places of business in several states, including California. Its California headquarters were at Stockton. The ailment with which the plaintiff's pigs were afflicted in the fall of 1935 was not at first diagnosed as hog cholera, but medicine was prescribed to be mixed with the food supplied to the animals. Out of precaution, the agent successfully vaccinated fifteen hogs in October, 1935, with two remedies administered simultaneously, to wit: Anti-hog cholera serum and hog cholera virus, which were prepared and sold by the defendant under a license in accordance with rules adopted by the bureau of animal industry of the department of agriculture of the United States.

The defendant supplied the plaintiff with a six-page pamphlet entitled "Hog Cholera; Prevention and Control". The document characterized hog cholera as a "highly infectious disease". It described the symptoms and progress of the disease. It suggested the method of diagnosis. It warned owners of hogs against unsanitary conditions and poor food. It recommended as a means of preventing the disease the simultaneous use of anti-hog cholera serum and hog cholera virus, prescribing the doses of each medicine to be administered according to specified ages of the hogs

and gave directions for surrounding conditions and for the method of vaccination of the animals. Among other statements included in the pamphlet were the following:

" 'Anti-hog cholera serum, prepared according to the methods originally worked out by the Bureau of Animal Industry, is the only agent known that can be regarded as a reliable preventive.' U. S. Department of Agriculture, Farmer's Bulletin No. 834, page 26.

. . . . . . . . . . . . .

"Prevention. Hog Cholera can positively be prevented *in all susceptible animals* by the simultaneous method of vaccination with Anti-hog Cholera Serum and Hog Cholera Virus. Vaccinated animals produce a fast and active immunity lasting for the life of the animal. Vaccination with serum and virus is positively the only way to prevent and control Hog Cholera.

. . . . . . . . . . . . .

"The use of serum alone will confer an immediate but temporary immunity which cannot be depended upon to protect the animal for more than 20 to 25 days."

Each bottle of serum sold by the defendant contained a label upon which the following language was printed:

"This bottle contains serum which has been produced in accordance with rules and regulations required by the Bureau of Animal Industry and has passed rigid pig test for potency and purity under government supervision. *Therefore, since we have no control over diagnosis, method of administration, or handling of this serum after it leaves our possession, we waive all responsibility following its use.*"

The respondent contends the italicized portion of the preceding paragraph constitutes an express disclaimer of warranty as to the result of the use of the vaccines. There was evidence of another similar alleged warranty in a later circular issued by the defendant. But it appears that document was not printed by the defendant until the fall of 1936, after the purchase and use of the vaccine by the plaintiff. That statement, therefore, could not have been relied upon by the plaintiff in his use of the compounds, and we shall not consider it on this appeal.

■ From a careful reading of the entire record in this case we are unable to say that the trial court abused its discretion in granting a new trial, and the order should therefore be affirmed. The alleged warranty is conditional. It

should be construed with the prescribed care of hogs, doses of medicine and manner of vaccination of animals recommended in the pamphlet. The pamphlet which contains the alleged warranty includes a table of prescribed doses of anticholera serum which must be administered so as to effectually prevent cholera. It states that "the very least amount that should be used under any condition" is 28 cubic centimeters of serum for hogs weighing from 40 to 90 pounds, and for hogs weighing over 180 pounds it requires 60 cubic centimeters. It prescribes for animals weighing over 250 pounds the addition of 2 cubic centimeters for each ten pounds. The undisputed evidence is that the plaintiff failed to use the minimum amount of serum prescribed in vaccinating its hogs. The plaintiff testified that it vaccinated from 800 to 1,000 hogs; that some of them weighed 280 pounds, and that the average weight was over 70 pounds. The evidence shows that plaintiff bought a total amount of serum aggregating 23,250 cubic centimeters and that some of this was not used, but was destroyed. It does not appear what amount of serum was used in vaccinating hogs weighing from 40 to 280 pounds. If 1,000 hogs were vaccinated the plaintiff failed to use the minimum amount of serum prescribed. The table of doses declares that "It is expected that larger doses will be used in the field *under average field conditions.*" The plaintiff testified that it had 2,000 hogs. It appears that a band of 150 hogs was shipped from Wisconsin during the drought season and added to its herd in the summer of 1936 when the epidemic occurred. The plaintiff testified that 466 of its hogs died within about five months from May to September, 1936. But we are directed to no evidence that it was only the vaccinated hogs that died. In the absence of such evidence we must presume that many of the hogs which died were not vaccinated. Moreover, the plaintiff testified that it vaccinated from 100 to 125 hogs each month. With the exception of a small bottle of serum purchased in the fall of 1935, all of the serum purchased from the defendant was procured from the middle of April to the middle of September, 1936. If we assume his operations of vaccination continued for five months at the estimate of 125 hogs per month, he would have treated only 625 animals. There is a wide discrepancy between that number and plaintiff's asserted estimate of 800 or 1,000 hogs which he declared that he vaccinated. The surrounding sanitary conditions

and the care and successful vaccination of hogs are made important elements by the terms of the circular for procuring effective treatment. The evidence is contradictory regarding such conditions. One veterinarian testified that he visited the plaintiff's premises in October, 1936, and found unsanitary conditions prevailed there. While the plaintiff usually employed an expert veterinarian to treat its hogs, it appears that the plaintiff vaccinated the hogs in 1936 without the aid of an expert. The expert witnesses agreed that while a nonexpert might successfully vaccinate hogs, it was important to have the assistance of a veterinarian for that purpose, especially when large numbers of a band were being treated. Doctor Herring, plaintiff's chief expert witness, said "that virus should be used by veterinarians". Four expert witnesses were elaborately examined as to the cause of the death of the hogs. Their evidence is absolutely conflicting on that subject. The disease of hog cholera is determined on post mortem examination, chiefly by the presence of little red spots called "pici blood spots", found in the bladder and intestines and on the liver and kidneys, together with other accompanying symptons. Dr. Herring examined only one hog which died at plaintiff's ranch. He positively asserted that the disease from which that pig died was "pure hog cholera". On the contrary, Doctor O. A. Diller, of Stockton, made a post mortem examination of two hogs October 12, 1936, and testified that he found "no evidence of hog cholera". He said he found evidence that the hogs died of bronchial pneumonia. He also said he visited the plaintiff's hog ranch on October 10th and found the pens were "dark, wet and cold", and in an unsanitary condition with decomposed garbage scattered about.

Under such conflicting evidence regarding the cause of the death of the hogs, we may not say the trial court abused its discretion in granting a new trial. ■ The credibility of witnesses, the weight and sufficiency of the evidence to establish a satisfactory case of damages resulting from a breach of warranty, were for the determination of the trial judge upon that motion.

It has been uniformly held that the granting of a motion for a new trial is within the sound discretion of the trial judge, and that it will not be disturbed on appeal in the absence of a showing of clear abuse of discretion. (*Malloway*

v. *Hughes,* 125 Cal. App. 573 [13 Pac. (2d) 1062] ; *City of San Diego* v. *Cuyamaca Water Co.,* 209 Cal. 152, 167 [287 Pac. 496] ; *Hanlon Drydock & Shipbuilding Co.* v. *Southern Pac. Co.,* 92 Cal. App. 230 [268 Pac. 385] ; *Petroff* v. *Nunes,* 123 Cal. App. 614 [11 Pac. (2d) 648] ; *Boness* v. *Helphinstine,* 132 Cal. App. 677 [23 Pac. (2d) 420] ; 20 Cal. Jur. 27, sec. 13 ; 2 Cal. Jur. 905, sec. 533.)

We are urged by the appellant to determine whether the language in the hog cholera circular constitutes a warranty which is binding upon the defendant and whether the language of the labels attached to each bottle of serum become disclaimers which relieve the defendant from the inference that the simultaneous use of its serum and virus under all circumstances will positively prevent cholera. Upon the record in this case, these are questions which we believe are unnecessary to the determination of this appeal pursuant to section 53 of the Code of Civil Procedure. However, we have no hesitancy in saying that the above-quoted assurance of a positive prevention of hog cholera by the simultaneous use of defendant's serum and virus, as stated in the circular, is conditional upon the administration of the proper quantity of serum prescribed by the table of doses therein contained, and dependent on the condition of the premises, the condition of the animals vaccinated, and the performance of the operation of vaccination in the manner prescribed. Clearly such minimum doses prescribed and such sanitary conditions and method of vaccination are an inseparable part of the warranty. Common sense teaches us that the prevention of cholera, like smallpox or any other virulent disease, depends on sanitary surroundings, the condition of the subject and many other circumstances. The efficiency of antidotes necessarily depends on attending circumstances and conditions. The hog-cholera circular clearly informs the reader of that fact. All expert witnesses agreed that the potency and effectiveness of vaccination of hogs depend on the administering of an adequate quantity of the serum. The evidence shows that five to ten per cent of all hogs die under normal conditions in spite of approved methods of care and treatment.

Moreover, in a suit for damages resulting from the death of hogs due to a lack of effectiveness or potency of the serum and virus, as distinguished from a suit to rescind

a contract to buy merchandise or to recover the price paid for defective compounds, we are of the opinion the italicized portion of the above-quoted language on the labels of all bottles of medicine should be construed to be a disclaimer under the circumstances enumerated, or at least a limitation on the liability of the defendant for the alleged warranty. The plaintiff admitted that these labels were read. Certainly the language that since the defendant had ''no control over diagnosis, method of administration, or handling of this serum after it leaves our possession, *we waive all responsibility following its use''*, is clear notice that in the absence of such control, the absolute prevention of hog cholera is not guaranteed under all circumstances and conditions from the mere use of the serum and virus.

█ Reputable authorities are cited, and it is undoubtedly the ordinary rule that it is too late to make a disclaimer of a warranty after a sale has been consummated. In the present case, however, it appears each bottle contained the same statement of limitation of guaranty. Even though the last-mentioned rule applied to the first small purchase of serum in October, 1935, the plaintiff would be bound to take notice that subsequent purchases would be likely to be made subject to that same restriction. Most of the serum purchased by the plaintiff was therefore procured with the knowledge or expectation of that disclaimer. It is reasonable to conclude that when one seeks to recover damages for the loss of pigs on account of the impotency of medicine administered, when the label on each bottle is read and understood, specifically warning the user thereof that the seller renounces and disclaims all responsibility for its use under specified circumstances, relying on the promise of the circular he may rescind the purchase and recover the price paid for the medicine, but he may not justly disregard the warning of the labels, use the serum in spite of that limitation and recover damages for the loss of the hogs, based solely on a suit for breach of warranty. Of course, a suit for negligence in compounding the medicines or for selling deteriorated serum and virus might, nevertheless, lie. But the cause of action based on such negligence was dismissed. The order granting a nonsuit on that count of the complaint was granted. No appeal was taken from that order, and it became final. That theory of liability is separate and dis-

tinct from this suit based on an alleged breach of warranty, and is not here involved.

The order is affirmed.

Deirup, J., *pro tem.,* and Tuttle, J., concurred.