## James et al. v. International Harvester Co.

June 15, 1943.

W. C. Hamilton and James C. Clay for appellants.

Lester Hogge for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

This is an appeal from a judgment for balance due on a truck sold by appellees to appellants. The cause was submitted to the court without intervention of a jury. There is filed in the record the court's opinion which so well states the issues and conclusions upon which judgment was founded that we take the liberty of adopting it as our opinion:

"On August 18, 1938, defendants by written order which by acceptance of the plaintiff became the contract of sale, bought from the plaintiff a motor truck for the sum, including financing charges and insurance premiums, of $1351.50. An old truck of defendants was accepted as part payment on the new truck at $425; defendants delivered to plaintiff a note for $926.50 payable in eighteen monthly payments beginning September 15, 1938, for the balance. The truck was delivered by the plaintiff to the defendants in August, 1938, when a mortgage was executed and delivered to the plaintiff by the defendant O. L. James on said truck. The contracts contained the usual precipitation clause, and provided that the title to the truck should remain in the seller until fully paid for, and also contained the following provision:

" 'The goods ordered hereunder are sold under the Regular Printed Warranty of the International Harvester Company, as printed herein and under no other. The purchaser agrees that this order contains the entire agreement relating to the sale of said goods, and that he has received a true copy thereof.'

"The warranty is as follows: 'The Company warrants each new International truck to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall be returned to it with transportation charges prepaid, and which its examination shall disclose to its satisfaction to have been thus defective, provided that such part or parts shall be so returned to it not later than ninety days after delivery of such vehicle to the original purchaser, and that at the time of such return the said vehicle shall not have been operated in excess of 5,000 miles. This warranty is expressly in lieu of all other warranties expressed or implied and of all other obligations or liabilities on its part, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles. This warranty shall not apply to any vehicle which shall have been repaired or altered outside of its factory in any way so as, in its judgment, to affect its stability or reliability, nor

which has been subject to misuse, negligence or accident, nor to any commercial vehicle made by it which shall have been operated at a speed exceeding the factory rated speed, or loaded beyond the factory rated load capacity.'

"The defendants paid on this note $41.00 on October 1, $10.00 on October 5, $51.00 on November 19, 1938, and $51.00 on February 1, 1939. This suit was brought by the plaintiff on August 31, 1939, upon the note, setting forth the failure of the defendants to pay the installments which were due, declaring the entire indebtedness due and seeking the enforcement of its lien on the truck to satisfy the indebtedness, and personal judgment against the defendants. Defendants by answer and counterclaim admit the execution of the contract and mortgage and note and the payments thereon, but further state that at the time of the purchase and sale of the truck it was represented to them by the plaintiff that the truck in question would do the services for which it was bought, viz: general hauling of the kind then engaged in by the defendants, and that the defendants bought the truck in reliance upon said warranties; that it was defective, practically worthless and caught on fire by reason of defects, within a very short time after its purchase and had to be repaired in garages shortly after its purchase, and about Easter 1939, it was practically destroyed by fire, though nowise the fault of defendants, and that at that time the truck was taken by the plaintiff to a garage in Morehead, where it was totally destroyed in a flood. Defendants further state that having no means with which to buy another truck they were damaged by reason of the loss of the use of the truck, in the sum of at least $1500, and seek the recovery of these damages, plus the amounts paid by the defendants on the truck, including the original payment of $425. By reply the plaintiff denies the affirmative allegations of the answer and counterclaim as amended, and plead the provisions of the contract of purchase and sale as against any relief to the defendants under their pleadings.

"The proof taken in behalf of defendants shows that very soon after the delivery of the truck it was necessary to have numerous repairs made on same,

and that some of its parts were defective; that within a short time after its purchase it caught fire at Olive Hill but the damage was slight. After that it was in a collision in Mason County and some damage was done by reason of that collision, and further that it was frequently in garages for repairs. About Easter 1939 it again caught fire and was severely damaged, and the defendants brought the truck into a garage at Morehead and had interviews with the insurance adjuster looking to a settlement of a claim of a fire loss on the truck. And further, that while the truck was in the garage it was damaged by a flood which practically destroyed it.

"By a stipulation filed herein, it is admitted that the plaintiff collected insurance on account of the last fire on the truck in the amount of $263.55, and that after the flood it sold the truck for junk for $75.00. The proof offered by plaintiff is limited to statements of the agent who called to collect the installments on the notes, and is to the effect that no complaint was made to him as to the truck, and plaintiff seems to base its case upon the claim that under the contract of sale and purchase the allegations of the answer and counterclaim as amended, and the proof taken to support same are not sufficient in law to entitle the defendants to any relief.

"Section 2651b-71 (now KRS 361.710), a section of the Uniform Sales Act, provides as follows: 'Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale.'

"It is obvious that the seller and purchaser of any article may make a definite contract limiting the liability of each under the contract, and it will be noted that under the warranty in question the seller went no further than to agree to make good at its factory all defective parts of the truck which might be returned to the factory within three months from the time of the sale, provided that at that time the truck had not been run exceeding 5,000 miles.

"There was no charge or proof to the effect that at any time the plaintiff was given any oppor-

tunity to remedy any defects of material or workmanship in the truck as required by the contract. The parties to this litigation made a contract which they had the right to do, and no court is authorized to alter or change the terms of the contract. Now it may be possible that, even under the contract in question, if the truck was absolutely worthless for the purposes for which it was sold, the purchaser had the right within a reasonable time after the discovery of the condition of the truck to offer to rescind the contract and to return the truck. This they did not do. They kept the truck and used it from August 1938 until it was practically destroyed by fire, some six months, and during which time they testify that they discovered the claimed worthless condition of the truck. They had the right to offer to rescind the contract or to rely upon the warranty. They did not offer to rescind nor did they undertake to have plaintiff to comply with its warranty by returning the defective parts for repair or replacement. Under the state of facts, as shown by the record, I am clearly of the opinion that the plaintiff is entitled to recover.

"The conclusions herein set forth are in accord with the case of Black Motor Co. v. Foure, 266 Ky. 431, 99 S. W. (2d) 177, in which a contract identical with the one in the case at bar was considered, and also in the case of Graves Ice Cream Co. v. Rudolph Wurlitzer Co., 267 Ky. 1, 100 S. W. (2d) 819, and cases cited therein."

Judgment accordingly was entered, motion for new trial denied and appeal granted. Counsel does not find fault with the court's conclusion as to facts, but contends that the law was not properly applied. The contention on this point is that there was a breach of the implied warranty that the truck would do the work for which it was intended, relying on J. B. Colt Co. v. Asher, 239 Ky. 235, 39 S. W. (2d) 263 (light plant case). The lower court answered this complaint, but if there is doubt on the subject, it is disposed of in the case of Frick Co. v. Wiley, 290 Ky. 665, 162 S. W. (2d) 190, 192, wherein we held that a buyer, after discovering defects in a machine, must elect to take action promptly after discovering the defect, and unless prevented by the seller from doing so, tender and offer to restore the property and rescind the

contract. "Even this right is lost if the warranty relied on is an express warranty and the specified conditions upon which the warranty is made available to the purchaser are not complied with." Citing authorities. The lower court found there had been no effort on the part of the purchasers to comply with the necessary movements to save their rights by an offer to return the truck after discovering the alleged defects, or its unsuitability for its intended use.

Judgment affirmed.