**IVY H. SMITH COMPANY, Appellant,**

v.

**MORETRENCH CORPORATION,**
Appellee.

No. 16939.

United States Court of Appeals
Fifth Circuit.

April 9, 1958.

Rehearing Denied May 16, 1958.

Charles R. Scott, John S. Cox, W. E. Grissett, Jr., Jacksonville, Fla., for appellant, Scott & Cox, Jacksonville, Fla., of counsel.

John M. Allison, T. Paine Kelly, Jr., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

Appealing from a summary judgment for defendant, based upon the conclusion

of the district judge that there was no genuine issue as to any material fact alleged in defendant's twelfth defense,[1] and that in law it constituted a complete defense to plaintiff's suit, plaintiff is here insisting that the district judge erred and his judgment must be reversed.

Of the contrary opinion, for the reasons hereafter stated, we cannot agree with this view.

This is the genesis and progress of the controversy in and out of court. In 1953, the U. S. Army Corps of Engineers called for bids for the construction of Pumping Station No. 9 of the South and Central Florida Flood Control District. When it made the plans and specifications available to prospective bidders, Smith obtained them preparatory to entering a bid.

Moretrench is the world's largest wellpoint company, wellpoints being a method of removing water from construction excavations. Prior to the time Smith bid, Moretrench sent written proposals for dewatering the construction site of Pumping Station No. 9 to all prospective bidders, including Smith. This written proposal recited that Moretrench was familiar with the specifications and existing conditions and had made borings at the site. Moretrench further proposed to furnish sufficient Moretrench wellpoint equipment to dewater the site for specified amounts and further set forth the quantity of wellpoint equipment necessary to accomplish the dewatering.

Using Moretrench's written proposal as the basis for its dewatering costs, Smith submitted a bid and was awarded the contract. He then wrote Moretrench and accepted its proposal, and the written contract dated February 25, 1954, attached as Exhibit A to plaintiff's complaint, was executed by the parties. Among other things it provided:

"* * * This agreement (together with the supplemental conditions as printed on the back of this sheet) contains all of the agreement between lessor and lessee and is to be binding upon the heirs, executors, administrators, successors, and assigns of both parties hereto, when approved by lessor at its main office at Rockaway, New Jersey."

It also contained the limitation of liability clause made the basis of the twelfth defense.

As a result of controversies over and during the progress of the work arising between the parties to the contract, Smith, alleging that plaintiff, as lessee, and defendant, as lessor, had on February 25, 1954, entered into an agreement in writing attached as Exhibit "A", wherein defendant had agreed to furnish to the plaintiff, as lessee, "sufficient Moretrench equipment to sufficiently dewater construction areas" but had breached its contract by failing so to do, plaintiff brought this suit for breach of contract and to recover damages in the sum of $500,000.

Defendant filed an answer to the complaint, setting up twelve defenses. The twelfth defense set up the limitation of liability clause contained in the agreement reciting:

"The liability of Lessor [Moretrench] to Lessee [Smith] is expressly limited to the free replacement (f. o. b. point of shipment) of any defective part or parts of the equipment furnished under or subsequent to this agreement on receipt by Lessor of said defective part or

---

1. "Twelfth Defense.
   "For its twelfth defense to the Complaint, this defendant alleges that the agreement between the parties, represented by Exhibit 'A' attached to the Complaint, contains all of the agreement between the parties, and said agreement provides that the liability of defendant to plaintiff is expressly limited to the free replacement of any defective part or

parts of the equipment furnished under or subsequent to such agreement, on receipt by defendant of said defective part or parts at Rockaway, New Jersey, and that any and all such defective parts were replaced promptly by this defendant, and thereby defendant discharged its obligation to the plaintiff under the provisions of the contract."

parts f. o. b. Rockaway, New Jersey, provided such defect is not caused by misuse or neglect on the part of Lessee."

Voluminous depositions were taken, and Smith filed a motion to strike certain of the twelve defenses, including the Twelfth Defense. In April, 1957, the deposition of Moore, President of Moretrench, was taken by Smith. In May, the district court entered its order denying Smith's motion to strike the twelfth defense. In June, Moretrench filed its motion for summary judgment based on the twelfth defense and supported it by an affidavit of Callender, its Vice-President. There followed a motion for the court to consider all depositions on Moretrench's motion for summary judgment and an affidavit of Smith, plaintiff's vice-president, in opposition to Moretrench's motion. On August 14, the court entered its order denying Smith's motion for leave to file a tendered reply to the twelfth defense and his motion for leave to file a tendered amended complaint. On the same day it entered final judgment in favor of Moretrench on the motion for summary judgment, holding that the twelfth defense constituted a complete defense to the action, and this appeal followed.

▆▆ Here appellant assails the judgment on two grounds. One of these is; that it was error to regard the February 25th written agreement as an agreement merely for a lease of equipment with an option to buy; that plaintiff should have been permited to plead and prove that it was not; and that there was an additional agreement, in effect a guarantee that the use of the equipment would satisfactorily dewater the construction areas. The other is that, accepting the agreement as a completely integrated agreement, it shows on its face that two things were agreed to. One was that Moretrench would lease equipment to Smith with an option to it to buy it. The other was that Moretrench had agreed and in effect guaranteed that the equipment furnished by it would do the job and that in construing the limitation of liability clause broadly to include both features of the agreement, the court erred.

Urging this view upon us and putting forward general propositions dealing with the construction of agreements in general and of agreements for limitation of liability in particular, appellant, citing cases, insists that in holding as it did, the court misconstrued the scope and effect of the limiting agreement and, by preventing plaintiff from pleading and proving agreements not integrated into the written contract, prevented plaintiff from properly presenting and establishing its case. Appellee does not at all disagree with appellant's general propositions as applied to the facts of the cases cited by it. It urges upon us, though, that as applied to the facts of this case, they are not contrary to the judgment, indeed they support it.

▆▆ In its turn, declaring that, comprehensively worded as it is, the clause limiting appellee's liability must and will be as comprehensively construed and applied, appellee insists that what and all that appellant is seeking to do here is to construe away the plainly worded meaning of the clause or, by varying the terms of a completely integrated contract, to import into it claimed contractual agreements not included in but excluded from it. Citing cases, many of them from this court, in support, appellant insists that the authorities overwhelmingly establish (1) that there is no public policy in favor of denying persons the right to limit their liability,[2] and

2. Sharples Separator Co. v. Domestic Electric Refrigerator Corp., 3 Cir., 61 F. 2d 499; James v. International Harvester Co., 294 Ky. 722, 172 S.W.2d 670; Southwestern Packing Co. v. Cincinnati Butchers' Supply Co., 5 Cir., 139 F.2d 201; Permutit Co. v. Massasoit Mfg. Co.,

3 Cir., 61 F.2d 529; The Nuska, D.C., 300 F. 231, affirmed R. R. Ricou & Sons Co. v. Fairbanks Morse & Co., 5 Cir., 11 F.2d 103; Charles Lomo & Son v. Globe Laboratories, 35 Cal.App.2d 248, 95 P.2d 173.

that such a provision in a contract will be enforced as written, and (2) that where parties have integrated their contract in a writing, they will not be permitted under the guise of proving independent agreements, to import into such contracts provisions supporting their claims.[3]

We think it may not be doubted that this is so. This court has written so much and so often on these matters that, without laboring them further, it is sufficient to say that we think the cases cited in notes 2 and 3 supra, are controlling here, and that under their authority the judgment must be affirmed.

3. Upper Mississippi Towing Corp. v. Calmes, 5 Cir., 162 F.2d 177 and cases cited in Note 3; Ramey v. Koons, 5 Cir., 230 F.2d 802; and South Florida Lumber Mills v. Breuchaud, 5 Cir., 51 F.2d 490.